**BLACKERT v. LANKFORD, Bank Com'r.**

No. 8327—Opinion Filed April 9. 1918.

Rehearing Denied June 11, 1918. Second

Petition for Rehearing Denied Dec.

24, 1918.

(176 Pac. 532.)

**1. Banks and Banking—Pleading—Insolvency—Objection to Evidence—Stockholder's Liability—Sufficiency of Petition.**

Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained, when the allegations are simply incomplete, indefinite, or conclusions of law. The amended petition in this case examined, and held to state a cause of action.

**2. Evidence — Documentary Evidence — Identity.**

The evidence here examined, and same sufficiently identifies the books of the bank to entitle the same to be introduced in evidence.

**3. Trial—Setting Case for Trial.**

Under section 5043, Rev. Laws 1910, a cause stands for trial whenever the issues have been made up for a period of 10 days; and the subsequent filing of a motion by plaintiff, directed to defendant's answer, but which is not filed within the time allowed for filing pleadings under the statute, does not revive the operation of the statute.

**4. Same—Statute—Delay.**

When the issues have once been fully made up by the filing of pleadings, or by failure to file them, the provision of the statute mentioned in the foregoing paragraph has spent its force, and thereafter any change in the issues caused by the filing of new or amended pleadings by leave of the court or consent of the parties does not, by reason of said action, necessarily work a delay of the trial.

**5. Banks and Banking—Stockholder's Liability—Discharge.**

Where the capital stock of a banking corporation has become impaired, and an assessment against the stockholders is ordered, under section 288, Rev. Laws 1910, to enable the bank to continue business, the payment of such assessment and the resumption of the business by the bank does not in any manner affect or discharge the stockholders from their general statutory liability for the debts of the bank upon its subsequent insolvency. The latter liability is designed solely for the benefit of the creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full.

**6. Same—Insolvency of State Bank—Liability of Stockholders—Estoppel.**

Where an action is instituted by the bank commissioner of the state to recover the double liability imposed by section 265, Rev. Laws 1910, as a general rule, all persons whose names are on the books of the bank, as the absolute owners of stock, are liable therefor, as parties dealing with the bank have a right to assume that the books of the bank show who are its stockholders, and as such stockholders they are bound for the liabilities of the bank in the manner provided by the statute. and if one knowingly permits his name to appear upon a stock book of the bank as a shareholder, he will be estopped, in favor of an action brought by the bank commissioner to collect the double liability from denying liability.

(Syllabus by Hooker, C.)

Error from District Court, Blaine County W. C. Crow, Assigned Judge.

Suit by J. D. Lankford, Bank Commissioner, against C. E. Blackert. Judgment for plaintiff, and defendant brings error. Affirmed.

Eagleton & Eagleton and Wm. O. Woolman, for plaintiff in error.

S. P. Freeling, Atty. Gen., J. I. Howard, Asst. Atty. Gen., and C. F. Dyer. for defendant in error

Opinion by HOOKER, C. The bank commissioner sued Blackert to recover the double liability imposed by section 265, Rev. Laws 1910, upon the stockholders of a state bank. The amended petition here alleges the qualification of the bank commissioner of the state of Oklahoma, and the existence on the 5th of May, 1911, and prior thereto, of a state banking institution known as the Bank of Commerce of Geary, Okla.; that C. E. Blackert, on the 5th of May, 1911, and prior thereto, was the owner of stock in said bank, and occupied and discharged the position of cashier of said bank, and that ac-

cording to the books of the bank he held and possessed in his own name 14 shares of the capital stock thereof of the par value of $100; that on said 5th day of May, 1911, the Bank of Commerce became insolvent, and the bank commissioner of this state, by virtue of authority in him vested, declared the same such, and took actual possession of said bank and all of its assets, and thereupon proceeded to administer the affairs of the bank by collecting its assets, paying its depositors, and applying the proceeds from the assets to the final liquidation of all liabilities of the bank including the reimbursement to the guaranty fund of the state of Oklahoma; that in the administration of the affairs of the bank, and in its liquidation, the plaintiff, as bank commissioner of said state, was compelled to use $24,000 of the money belonging to the guaranty fund of the state of Oklahoma in order to pay the depositors of the defunct Bank of Commerce; that the capital stock of the Bank of Geary at the time of its insolvency was $10,000, and that the amount taken from the depositors' guaranty fund was more than twice the amount of the capital stock of said bank, and that the assets of the bank at the time of its insolvency were insufficient to liquidate its indebtedness to the depositors' guaranty fund, and that as bank commissioner he had collected approximately $6,000 of the assets of the bank, which was insufficient to pay the indebtedness of the bank; that on the 5th day of May, 1911, he, as bank commissioner aforesaid, directed the officers and stockholders and directors of the Bank of Commerce to levy an assessment of 100 per cent. of the capital stock of said bank by reason of impairment thereof, and that the defendant, C. E. Blackert, as one of the stockholders of said bank, had failed to pay the 100 per cent. assessment of his holdings of the stock in said bank so levied, and by reason thereof the said Blackert was indebted to the bank commissioner for the use of the guaranty fund of the state of Oklahoma in the sum of $1,400. being a 100 per cent. assessment and double liability provided against a stockholder by the laws of the state for which judgment was sought here.

A trial was had in the lower court, and an instructed verdict returned in favor of the bank commissioner against the plaintiff in error, from which an appeal is had here. and the plantiff in error asserts reasons why the judgment of the lower court should be reversed.

The amended petition was filed in this case on the 20th day of January, 1913. On the 7th day of March. 1913, the defendant filed his answer. On the 9th day of Sep-

tember, 1913, the plaintiff filed his motion to strike. On the 9th day of January, 1914, the court sustained the motion to strike, and on the 20th day of January, 1914, leave was granted to the defendant to file an amended answer, which was done. On the 6th day of March, 1914, plaintiff filed a motion to strike certain parts of the amended answer, and on the 10th day of September, 1914, the court sustained the motion to strike in part and overruled the same in part, and thereafter on the 21st day of October, 1914, the defendant filed another amended answer by permission of the court, and on the 11th day of September, 1915, the plaintiff filed a reply, and on the 11th day of January, 1916, plaintiff filed his motion to strike certain parts of the defendant's second amended answer, and on the 19th day of January, 1916, the defendant filed an amendment to his answer, and on the 25th day of January, 1916, plaintiff filed a motion to strike certain parts of the second amended answer and the supplement thereto. The record is silent as to whether this last motion to strike was ever passed upon by the court, except in the journal entry it appears that the same was sustained, and the plaintiff in error asserts that, inasmuch as these motions had not been disposed of 10 days before the cause went to trial on the 25th day of January, 1916, the trial court committed an error in forcing him, over his objection, to enter said trial.

This question seems to have been determined adversely to the contention of the plaintiff in error in the case of C., R. I. & P. R. Co. v. Pitchford, 44 Okla. 197, 143 Pac. 1146, wherein this court said:

"1. Under section 5834, Comp. Laws 1909 (section 5043, Rev. Laws 1910), a cause stands for trial whenever the issues have been made up for a period of 10 days: and the subsequent filing of a motion by plaintiff, directed to defendant's answer, but which is not filed within the time allowed for filing pleadings under the statute, does not revive the operation of the statute.

"2. When the issues have once been fully made up by the filing of pleadings, or by failure to file them, the provision of the statute mentioned in the foregoing paragraph has spent its force and thereafter any change in the issues caused by the filing of new or amended pleadings by leave of the court, or consent of the parties does not, by reason of said section, necessarily work a delay of the trial."

It is apparent, from an examination of the record here, that under the pleadings this cause stood regularly for trial several months prior to January 25, 1916, the day upon which the trial began.

It is further asserted by the plaintiff in error that the trial court committed an error in refusing to sustain an objection to the introduction of any evidence under the amended petition, for the reason that said pleadings did not state facts sufficient to constitute a cause of action in favor of the bank commissioner of this state and against the defendant.

By a careful examination of the pleadings in question, we are unable to see where there is a failure to allege any matter essential to the relief sought, nor has our attention been called to any specific reason why this assignment of error is good. This court in Sulsberger & Sons Co. v. Castleberry, 40 Okla. 613. 139 Pac. 837, through Mr. Justice Kane, said:

"Where the sufficiency of a petition is challenged solely by an objection to the introduction of evidence thereunder, such objection, not being favored by the courts, should generally be overruled, unless there is a total failure to allege some matters essential to the relief sought, and should seldom, if ever, be sustained when the allegations are simply incomplete, indefinite, or conclusions of law."

Section 265, Rev. Laws 1910, makes every stockholder of a state bank liable for an additional amount equal to the stock held by him, and it makes each · stockholder liable for this amount individually.

The petition in this case alleges the capacity of the plaintiff to sue which is not challenged here, the existence of the Bank of Commerce as a state bank with a capital stock of $10,000, its insolvency, the taking over of the same by the bank commissioner of the state on May 5, 1911, the ownership of the stock therein by the defendant, and the position held by him therein; and it further alleges that the bank commissioner was compelled to use $24,000 of the guaranty state fund of the state to pay depositors in said bank, and that the bank commissioner had been only able to collect $6,000 to repay the fund, leaving a deficit of $8,000, etc., and we are unable to see wherein the same fails to state a cause of action.

It is contended by the plaintiff in error that the trial court committed an error in admitting in evidence the books of the Bank of Commerce of Geary, without the same being properly identified, and without proving by whom the entries therein had been made.

It appears from an examination of the record that Earnest, the assistant bank commissioner, testified as a witness in this cause, and in the course of his examination reference was made to the entries in the books of the Bank of Commerce, and the contents

thereof introduced in evidence over the objection of the plaintiff in error.

The theory of the objection urged by the plaintiff in error was that the entries in these books were not admissible until it was established by whom the entries in these books were made, or proof of the handwriting of the person who made them, in case of his death or absence from the country.

It is asserted by the defendant in error that under section 5115, Rev. Laws 1910, these books were public records, and as such entitled to be admitted in evidence without further certification or authenticity. Said section above mentoned is as follows:

"The books and records required by law to be kept by any county judge, * * * or other public officers, may be received in evidence in any court; and when any such record is of a paper, document, or instrument authorized to be recorded, and the original thereof is not in the possession or under the control of the party desiring to use the same, such record shall have the same effect as the original; but no public officer herein named or other custodian of public records, shall be compelled to attend any court * * * sitting more than one mile from his office with any records belonging to his office or in his custody as such officer."

While these books were not kept by the bank commissioner of the state in the discharge of his duties as such, the mere fact that the bank commissioner in the discharge of his public duty acquires the control and possession of these books is not of itself sufficient in our opinion to render the same admissible in evidence, as the records of public officers kept by them as set forth in the provision of the statute above quoted. This contention of the plaintiff in error in our judgment is sound, but the same cannot avail him here, because the testimony of the witness Earnest was to the effect that certain entries therein were made by a young lady, who was an employe of the bank, and certain other entries were made by a young man who was likewise in the employ of the bank, and the assistant bank commissioner further testified to the fact that the books had been turned over to him as such assistant bank commissioner by the plaintiff in error, and designated by the plaintiff in error as the books of the bank, and that he and the plaintiff in error had worked thereon together to ascertain the condition of the bank, and in fact the evidence taken as a whole was sufficient to justify the introduction of these books in evidence without further authenticity.

It might be further said that the plaintiff in error testified as a witness here in his own behalf, and did not seek to contradict or deny the evidence established by the books of the bank, but virtually admitted the same to be correct, and the error, if any, was not prejudicial to him.

It is further shown that in December, 1910, several months before the bank in question was declared insolvent, an assessment of 60 per cent. was levied on the stock of the bank in order to repair the capital stock thereof, and that the plaintiff in error paid a 60 per cent. assessment upon his stock, and contends here that he should be allowed a credit upon the amount sought to be recovered in this action by the payment then made by him.

Section 288, Rev, Laws 1910, provides in substance that, whenever it appears that the capital stock of any bank doing business in the state of Oklahoma shall have become impaired, the bank commissioner shall notify such bank to make such impairment good within 60 days and that it shall be the duty of the officers and directors of a bank receiving such notice from the bank commissioner to immediately call a special meeting of the stockholders for the purpose of levying the assessment sufficient to cover the impairment of the capital stock of said bank. The purpose of the assessment was not to benefit creditors, because the bank was then a going concern; but it was only for the purpose of repairing the impaired capital stock of the bank, and was a benefit to the corporation and to the stockholders only. The creditors of the bank had no right to participate in the proceeds of this assessment. This provision of the statute does not impose any personal liability on the stockholders, nor does it create any right to enforce it but in the bank itself, and the right of the bank is not against the stockholders, but against the stock itself. If the assessment is not paid within the time fixed by the statute, the stock will be sold: but, if the stockholder does not wish to lose the stock, he can retain it by paying the assessment. This is not the double liability imposed by section 265, but is in the nature of a reinvestment in this stock to the amount of the assessment.

There is a great similarity in the federal and state statutes as to the methods for the repair of the capital stock. See section 288, Rev. Laws 1910 (section 5205, Rev, St. U. S.). The Supreme Court of the United States in the case of Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 39, 30 L. Ed. 260, said:

"'The second ground of defense to the action at law is, in our opinion equally un-

tenable. The assessment imposed upon the stockholders by their own vote, for the purpose of restoring their lost capital, as a consideration for the privilege of continuing business, and to avoid liquidation under section 5205 of the Revised Statutes, is not the assessment contemplated by section 5151, by which the shareholders of every national banking association may be compelled to discharge their individual responsibility for the contracts, debts, and engagements of the association. The assessment as made under section 5205 is voluntary, made by the stockholders themselves, paid into the general funds of the bank as a further investment in the capital stock, and disposed of by its officers in the ordinary course of its business. It may or may not be applied by them to the payment of creditors, and in the ordinary course of business * * * of liquidation, to the payment of creditors ratably; whereas, under section 5151, the individual liability does not arise, except in case of liquidation and for the purpose of winding up the affairs of the bank. The assessment under that section is made by authority of the Comptroller of the Currency, is not voluntary, and can be applied only to the satisfaction of the creditors equally and ratably. If the claim in the present case were allowed, it would follow that in every case payments made by stockholders, for the purpose of restoring the impaired capital, would be considered as credits on the ultimate individual responsibility of shareholders, and the whole efficiency of the provisions of section 5151, for the protection of the creditors of the company at the time of liquidation would be destroyed. The obligations of the shareholders under the two sections are entirely diverse, and payments made under section 5205 cannot be applied to the satisfaction of the individual responsibility secured by section 5151. Scovill v. Thayer, 105 U. S. 143 [26 L. Ed. 968]."

This question was also before the Supreme Court of Minnesota, in the case of N. W. Trust Co. v. Bradbury, 117 Minn. 83 134 N. W. 513, Ann. Cas. 1913D, 69, and the court said:

"The constitutional liability of stockholders in banking corporations was designed solely for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. The corporation itself has no authority over the fund, cannot compel its payment, nor by any act on its part release the stockholders therefrom. It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet \the payment of obligations of the corporation. .It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists in favor of the creditors collectively, not severally, and in proportion to the amount of

their respective claims against the corporation."

Section 4802, vol. 4, of Thompson on Corporations, says:

"The liability imposed by Constitutions and statutes on stockholders for the debts of the corporation is now held and recognizd generally as primary and not secondary. The conclusion, therefore, is that stockholders under such provisions do not occupy the position of surety to the corporation. Their liability is not only primary, but generally is direct to the creditors, and may be enforced without any proceedings whatever against the corporation, unless a suit against the corporation is made a condition precedent. The liability of the stockholder is, in our opinion, says the Supreme Court of California, as distinct and separate from that of the corporation as it would be if the act had made no provision for any other liability than that of stockholders for the debts of the company. * * * Stockholders are liable as principals, and not as sureties or guarantors. This liability is said to be a security for the exclusive benefit of creditors and over which the corporate authorities have no control."

In 3 R. C. L. p. 397, it is said:

"The statutory or constitutional liability imposed upon stockholders is for the benefit of the creditors of the bank, and there can be no question but that the corporation, when an indebtedness is incurred, may contract for a modification or waiver of the stockholder's liability. Where the capital of a banking corporation has become impaired, and an assessment against the stockholders is ordered under a statute to enable the bank to continue business, the payment of such assessment and the resumption of business by the bank do not in any manner affect or discharge the stockholders from their general statutory or constitutional liability for the debts of the bank upon its subsequent insolvency. The latter liability is designed solely for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. The corporation itself has no authority over the fund, and cannot compel its payment, or by any act on its part release the stockholders therefrom. It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation."

After a careful consideration, we are of the opinion that the plaintiff in error is not entitled to a credit for the 60 per cent. assessment paid by him upon the capital stock of said bank owned by him in December, 1910, in order to repair the same, and the trial court was unquestionably correct in

denying to him the right to have a credit therefor.

It is further asserted by the plaintiff in error that the lower court erred in not holding that the bank commissioner was required to procure an order authorizing him to sell certain assets of the Bank of Commerce of Geary to the American State Bank of Geary.

The evidence in this case discloses that Mr. Blackert, the plaintiff in error, was cashier, director, and stockholder in the Bank of Commerce of Geary, and that on the 4th day of May, 1911, the day before the bank in question was declared insolvent by the bank commissioner of this state the board of directors of said bank in due session passed a resolution as follows:

"A meeting of the board of directors of the Bank of Commerce of Geary, Oklahoma, was held in its banking room at 3 o'clock p. m. on May 4, 1911. Directors present: W. H. Hall, C. E. Baldwin, G. E. Hall, C. E. Blackert. The condition of the bank was discussed with W. C. Earnest, state bank examiner, and the bank was found to be in a critical condition, and the board passed a resolution to have Mr. Earnest effect a deal with the American State Bank of Geary, Oklahoma, whereby it would purchase all of the good bills receivable and take over and pay off depositors. The board gave full power to Mr. Earnest to effect this sale, and especially ratified all of his actions in effecting such arrangement. It was found that a deficit of about $20,000 existed between the good assets taken by the American State Bank and the amount of liabilities due the depositors, and to secure Mr. Earnest in advancing said sum from the guaranty fund the directors pledged the remaining assets of the bank, and agreed that Mr. Earnest should proceed to collect the same, advancing in what to him may seem to be the most practical way. Mr. Earnest agreed to return to the board of directors all the unused assets after repaying the guaranty fund.

"The capital being impaired, the examiner levied a 100 per cent. assessment on all the stockholders of the said Bank of Commerce, to be paid as required by law. Official notice is hereby ordered sent to each stockholder.

"W. H. Hall, President.
"G. E. Hall, Secretary."

And thereafter, on May 5, 1911, the Bank of Commerce entered into a written contract with the American State Bank of Geary, as follows:

"Geary, Oklahoma, May 5, 1911.

"Agreement.

"This agreement, made this 5th day of May, 1911, by and between the American State Bank of Geary, Okla., party of the first part, and the Bank of Commerce of Geary, Oklahoma, party of the second part:

"Witnesseth: That the party of the first part, for and in consideration of $36,321.04 in notes and $25,065.48 in cash and other assets, receipt of which is hereby acknowledged, does hereby undertake and agree to pay all deposits, both individual and certificates of deposit, cashier's checks, and rediscounts, as shown by the daily statement of the books of the Bank of Commerce of Geary, Oklahoma, on this 5th day of May, 1911: it being expressly understood that the depositors are to be paid through the American State Bank of Geary, Oklahoma.

"It is further understood and agreed that the directors of the American State Bank are to furnish the state bank commissioner with the necessary statement showing the payment of depositors in full as above agreed.

"American State Bank,
"By M. H. Collins, Pres.
"Bank of Commerce,
By W. H. Hall, Pres."

"[Seal]"

So it would seem that the contention of the plaintiff in error is not justified by the evidence in this case.

The plaintiff in error claims that he should not be held liable in this action upon the nine shares of stock purchased by him a few months before the bank was adjudged insolvent, from one Young, who was its then cashier, because Young practiced a fraud upon him at the time of the sale of said stock, and that he thereafter had instituted a suit in the district court of Blaine county to rescind said sale of said stock, and that a judgment had been duly obtained canceling said sale and restoring the parties in statu quo, and that on account of these facts that he should have been permitted to have shown upon the trial in the court below that he was not the owner of said stock as shown by the books of the bank. This suit was not filed, nor judgment rendered, until after the bank was declared insolvent.

In 3 R. C. L. p. 399, it is said:

"On the other hand, as a general rule, all persons who appear on the books of the bank as the absolute owners of stock are liable. Parties dealing with a bank have a right to assume that all persons shown by the books of the corporation to be stockholders are bound for the liabilities of the bank in the manner provided by the statutes under which the bank is organized. If, therefore, a person knowingly permits his name to appear upon the stockholders as a shareholder in fact, he will be estopped in favor of creditors from denying liability. For this several reasons are given. One is that he is estopped from denying his liabili-

ty by voluntarily holding himself out to the public as the owner of the stock, and his denial of ownership is inconsistent with the representations he has made; another is that by taking the legal title he has released the former owner; and a third is that after having taken the apparent ownership, and thus become entitled to receive dividends, etc., it would be inequitable to allow him to refuse the responsibilities of a stockholder. And a stockholder, after having purchased his stock and registered it, receiving dividends, which he retains, and permitting the depositors to rely upon his apparent ownership, cannot repudiate his liability on the ground that he was induced to purchase his stock through fraudulent representations as to the financial condition of the bank. After the bank has gone into liquidation, and is proceeding to make calls to satisfy claims of creditors, it is too late for one who has, up to that time, allowed his name to appear as a stockholder, to avoid liability on the ground that his subscription was obtained by fraud."

See section 290, Rev. Laws 1910, which provides:

The president and cashier of every incorporated bank shall cause to be kept at all times a correct list of the names and residences of all the shareholders in the bank and the number of shares held by each in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors of the bank, and the officers authorized to assess taxes under the state authority, during business hours of each day in which business may be legally transacted. A copy of such list, verified by the oath of such president or cashier, shall be transmitted to the bank commissioner on the first Monday in January of each year."

The rule announced by text writers and by the federal and the state courts seems to be that a person whose name rightfully appears on the books of a bank corporation as a shareholder must respond as such to all the statutory liabilities imposed upon shareholders, and this rule applies with full force to those holding stock as collateral security, unless that fact appears on the books of the corporation. See Hurlburt v. Arthur, 140 Cal. 103, 73 Pac. 734, 98 Am. St. Rep. 17; Magruder v. Colston, 44 Md. 357, 22 Am. Rep. 47; Pauly v. S. L. & T. Co., 165 U. S. 620, 17 Sup. Ct. 465, 41 L. Ed. 844; Anderson v. Phil. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525, 28 L. Ed. 478; Adams v. Clark, 36 Colo. 65, 85 Pac. 642, 10 Ann. Cas. 774; O'Connor v. Witherby, 111 Cal. 523, 44 Pac. 227; Flynn v. A. B. & T. Co., 104 Me. 141, 69 Atl. 771, 19 L. R. A. (N. S.) 428, 129 Am. St. Rep. 378.

It being conclusively shown by the books of the defunct bank that the plaintiff in error was the owner of 14 shares of the capital stock of said bank in his own name, under the authorities above quoted, which in our judgment state the rule correctly, he cannot be now heard to say that he was not the owner of said stock, and thereby escape liability to the depositors of said bank, who relied upon the record as made by him and the other officers of the bank, and placed their money on deposit in the institution.

Having determined that the plaintiff in error cannot be heard to deny the liability imposed by statute upon stockholders as shown by the books of the bank, and that he is not entitled to a credit of the assessment paid in December, 1910, in order to repair the capital stock, and that a sale of the Bank of Commerce was authorized by the governing body thereof prior to the same being adjudged insolvent and possession being taken by the bank commissioner of the state, it therefore follows that the trial court did not commit error in striking these matters from the amended answer, as they constituted no defense to the cause of action sued for by the plaintiff below.

Under the record we are of the opinion that the trial court properly directed a verdict in favor of the defendant in error, and against the plaintiff in error, and the judgment of the lower court is affirmed.

By the Court: It is so ordered.