[Civil. No. 2423.   Filed June 2, 1926.]

[246 Pac. 759.]

M. WEHBY, Appellant, v. H. J. SPURWAY, Receiver of the TUCSON NATIONAL BANK OF TUCSON, ARIZONA, a Corporation, Appellee.

1. BANKS AND BANKING — STOCKHOLDER OF NATIONAL BANK TRANSFER-RING STOCK WITHIN SIXTY DAYS PRECEDING FAILURE OF BANK IS IN SAME POSITION AS THOUGH NO TRANSFER HAD BEEN MADE, IF TRANSFEREE IS NOT RESPONSIBLE (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689], SUPERSEDING REV. STATS. U. S., § 5151).—Under Federal Reserve Act 1913, section 23 (U. S. Comp. Stats., § 9689), superseding Revised Statutes of the United States, section 5151, stockholder of national bank transferring stock within sixty days preceding failure of bank is in no different position so far as his liability for stock assessment is concerned than if he had made no such transfer, if transferee is not responsible.

2. BANKS AND BANKING — LIABILITY OF STOCKHOLDER OF NATIONAL BANK FOR STOCK ASSESSMENT IS SOLELY FOR BENEFIT OF BANK'S CREDITORS REPRESENTED BY RECEIVER OF BANK (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]).—Liability of stock-holder of national bank for stock assessment under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689), is solely for benefit of bank's creditors, represented by receiver of bank, the bank itself having no authority to compel payment of assessment or release stockholder.

3. BANKS AND BANKING — STOCKHOLDER OF NATIONAL BANK CANNOT OFFSET STOCK ASSESSMENT AGAINST DEPOSITS, BUT MAY OFFSET

OBLIGATION TO BANK (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]). — Stockholder of national bank has no right to offset stock assessment under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689), against his deposits, but may offset obligation owing to bank.

4. BANKS AND BANKING — LIABILITY OF STOCKHOLDER OF NATIONAL BANK IS DETERMINED BY RECORDS OF BANK REGARDING STOCK OWNERSHIP, AND NOT BY CONDUCT OF BANK'S OFFICERS INDUCING STOCKHOLDER TO BECOME SUCH (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]). — Liability of stockholder of national bank for stock assessment under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689), is determined by his ownership of stock and what he permitted bank's records to show concerning it, and not by conduct of bank's officers in inducing him to become a stockholder.

5. BANKS AND BANKING — ONE WHOSE NAME APPEARS WITH HIS CONSENT ON STOCK BOOK OF NATIONAL BANK AS A STOCKHOLDER WITHIN SIXTY DAYS PRIOR TO FAILURE OF BANK IS LIABLE TO CREDITORS FOR ASSESSMENT, THOUGH STOCK PURCHASE WAS INDUCED BY FRAUD (REV. STATS. U. S., § 5210 [U. S. COMP. STATS., § 9773]; FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]). — In view of Revised Statutes of the United States, section 5210 (U. S. Comp. Stats., § 9773), one whose name appears with his consent on stock book of national bank as stockholder within sixty days prior to failure of bank, whether induced by fraud or not, is liable to creditors for assessment under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689).

6. BANKS AND BANKING — MERE OWNERSHIP OF STOCK WITHIN SIXTY DAYS PRIOR TO FAILURE OF NATIONAL BANK RENDERS OWNER LIABLE FOR STOCK ASSESSMENT, REGARDLESS OF TIME STOCK HAS BEEN HELD (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]). — Under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689), mere ownership of stock within sixty days prior to failure of national bank renders owner liable for stock assessment, regardless of length of time he may have held stock.

7. BANKS AND BANKING — RETURN AND REDELIVERY OF STOCK TO NATIONAL BANK IS A "TRANSFER" THEREOF, SUBJECTING STOCKHOLDER TO LIABILITY FOR ASSESSMENT IF TRANSFERRED WITHIN SIXTY DAYS BEFORE BANK'S FAILURE (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]). — Return and redelivery of stock to national bank for fraud in inducing its purchase constitutes a transfer thereof within meaning of Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689), and, if made within sixty days before bank's failure, subjects stockholder to liability for assessment.

8. BANKS AND BANKING — THAT STOCK SOUGHT TO BE ASSESSED ON
   FAILURE OF NATIONAL BANK WAS NOT PART OF THAT ORIGINALLY
   ISSUED IS IMMATERIAL (FEDERAL RESERVE ACT 1913, § 23 [U. S.
   COMP. STATS., § 9689]).—In determining liability of stockholders
   of national bank for assessment on failure of bank under Federal
   Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689),
   fact that stock held by defendant was not part of original issue,
   but some that bank had taken as security for debt, is immaterial.

See (1) 7 C. J., p. 771, n. 24 New.   (2) 7 C. J., p. 769, n. 1,
p. 776, n. 76, p. 777, n. 85 New.   (3) 7 C. J., p. 652, n. 80, p. 779,
n. 11.   (4) 7 C. J., p. 774, n. 61, 62.   (5) 7 C. J., p. 769, n. 8,
p. 774, n. 62 New.   (6) 7 C. J., p. 769, n. 5.   (7) 7 C. J., p. 771,
n. 25 New.   (8) 7 C. J., p. 769, n. 7 New.

APPEAL from a judgment of the Superior Court
of the County of Pima. Gerald Jones, Judge. Affirmed.

Messrs. Curley & Pattee, for Appellant.

Messrs. Mathews & Bilby, for Appellee.

McALISTER, C. J.—This is an action to recover
an assessment upon national bank stock. It succeeded in the trial court, and the defendant appeals.
The complaint alleges in substance that The Tucson
National Bank, whose capital stock is divided into
1,000 shares, each with a par value of $100, failed on
May 2, 1923, and that M. Wehby was at that time the
owner of fifty of these shares and continued to be
until the filing of this action on January 30, 1924;
that on December 13, 1923, the Comptroller of Currency of the United States levied an assessment of
$100 upon every share of stock held and owned by
the stockholders at the time of the failure, and directed appellee, the receiver of said bank, to enforce
such liability; that the latter made demand upon
appellant for the sum of $5,000, but he failed to pay
the same or any part thereof.

The answer, so far as relevant to this appeal, alleges that Wehby was induced to purchase this stock

through the representations of W. H. Land, the president and manager of the bank, that it was in a solvent and prosperous condition and that its stock was well worth $130 per share; that these representations were untrue and known at the time by said Land and the officers of the bank to be untrue, the bank being then in a failing condition and unable to meet its obligations, although appellant, who was a merchant without banking experience, believed and relied upon them; that appellant, having learned thereafter of the fraud practiced upon him repudiated and rescinded his contract of purchase and tendered back the stock on April 9, 1923; that the bank accepted it and returned to him the consideration he had paid therefor, to wit, two promissory notes of Bustamente and Lizzarraga aggregating $6,176; that the stock was not a part of the original issue, but had been taken over by the bank on an indebtedness due it by one Snyder and then resold to appellant.

The plaintiff moved to strike the answer except its formal parts and for judgment on the pleadings. The court held that the answer did not state a defense, and, considered in connection with the complaint, disclosed that appellee was entitled to judgment. Hence, the motion to strike was granted, and judgment for appellee on the pleadings followed.

Three errors are assigned, but they raise in different ways only the question of the sufficiency of the answer to plead a defense. Whether the ruling that it did not is correct must be determined by the provisions of section 23 of the Federal Reserve Act of December 23, 1913, which read as follows:

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their

shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure." U. S. Comp. Stats., § 9689.

Previous to the passage of the Federal Reserve Act, the liability of stockholders in national banks for assessments was governed by section 5151, Revised Statutes of the United States, which is in the following language:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

This section was enacted for the purpose of providing a fund equal in amount to the par value of the stock owned by the shareholders to make good the contracts, debts and engagements of the bank. It renders each shareholder, in addition to the amount invested in his stock, individually liable to the extent of the par value thereof. Under it there was no way by which one owning stock could avoid this liability, and his only method of relieving himself of it was to sell and transfer his stock. The fact that this could be done any time previous to the failure of a bank led to the practice of transferring stock to financially irresponsible people when it became evident that a national bank would be compelled to close its doors, and transactions of this kind grew so common that Congress determined to stop them or at least

render them conditionally ineffective for a period of time. The method it adopted was to amend paragraph 5151 in such a way as to make the "stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, . . . liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability." Under this amendment no stockholder who transfers his stock within the sixty days preceding the failure of a bank is in any different or better situation, so far as his liability for a stock assessment is concerned— that is, if the transferee is not responsible—than if he had made no such transfer. The stock is still his within the meaning of the statute. That held by appellant was returned to the bank April 8, 1923, or just twenty-three days prior to the closing thereof on May 2d, which brings that act within the sixty-day period; hence, if he really became a stockholder and the return or redelivery of his stock amounted to a transfer thereof, he was liable for the assessment, and the judgment should be affirmed.

The liability of a stockholder for a stock assessment was created solely for the benefit of the bank's creditors. This clearly appears from the wording of the statute authorizing the Comptroller of the Currency to impose it, namely, section 23 of the Federal Reserve Act, and also from the authorities construing it, or rather the older statute which it incorporates within its terms, paragraph 5151, *supra*. "The fund thus provided for . . . is manifestly," says the court in *Wingate* v. *Orchard,* 75 Fed. 241, 21 C. C. A. 315, "a trust fund to a *pro rata* share of which all creditors are equally and equitably entitled." The bank itself has no authority whatever

over it; it can neither compel its payment nor release the stockholders from their liability for it. In the collection and distribution of it the receiver represents the creditors as distinguished from the bank, even though in collecting what is due the latter and paying what it owed at the time of insolvency he represents it. Section 4802, vol. 4, Thompson on Corporations; 3 R. C. L. 397, par. 27. That he does not bear the same relation to this liability he does to obligations due the bank is shown by the fact that he is compelled to force each stockholder to pay the full amount of his assessment whether he had money in the bank at the time of its failure or not, when he is not required to collect in cash from a stockholder having deposits therein the full amount of an obligation he owes the bank itself. This results from the fact that the law denies a stockholder the right to offset his stock assessment with his deposits (*Wingate* v. *Orchard, supra*), but does permit him to use the latter as an offset to an obligation he owes the bank, such, for instance, as a promissory note. *Scott* v. *Armstrong,* 146 U. S. 499, 36 L. Ed. 1059, 13 Sup. Ct. Rep. 148 (see, also, Rose's U. S. Notes); *Hammons* v. *Grant,* 26 Ariz. 344, 225 Pac. 485.

It follows that a stockholder's liability upon a stock assessment is a matter between him and the creditors of the bank acting through their trustee, the receiver, and that his responsibility therefor must be determined by the fact of his ownership and what he permitted or caused the bank's records to show concerning it, and not by what was said and done by the bank's officers to induce him to become such. Persons who deposit money in a bank, keep it there after their account is started, or increase the amount thereof, do so mainly upon their faith in those who own and control it, and, in order that they may have some knowledge to guide them in such a matter, the law requires the president and cashier of every na-

tional bank to keep at its place of business a full and correct list of the names and residences of its stockholders showing the number of shares held by each, and provides that such list shall be subject to the inspection of all shareholders and creditors of the bank and the officers authorized to assess taxes under state authority. Section 5210, Rev. Stats. U. S. (U. S. Comp. Stats., § 9773).

It is evident that one of the main purposes of this provision was to provide a method by which those wanting to establish or continue the relation of creditor and debtor with the bank might learn who its owners are and to whom they could look to meet its obligations in case it should become unable to do so itself. In fact, in *Pauly* v. *State Loan & Trust Co.,* 165 U. S. 606, 622, 41 L. Ed. 844, 17 Sup. Ct. Rep. 465, 471, the Supreme Court of the United States said that one who had not in fact bought stock in the bank, but having received shares therein simply as collateral security for a debt, and held himself out on the books of the bank as the true owner thereof, might be treated as such and held liable for a stock assessment upon the insolvency of the bank. The reason for this, the court said was:

"By allowing his name to appear upon the stock list as owner he represents that he is such owner; and he will not be permitted, after the bank fails and when an assessment is made, to assume any other position as against creditors. If, as between creditors and the person assessed, the latter is not held bound by that representation, the list of shareholders required to be kept for the inspection of creditors and others would lose most of its value."

Such being true the things that led to the sale of the stock were entirely immaterial to the creditors, and it was not necessary that they should have investigated how the holders of stock became such before a cause of action in their favor upon a stock

assessment could have come into existence. What representations were made to induce the purchase was no concern of theirs, for they had a right to assume that the names of the persons appearing upon the stock book of the bank as shareholders were such in fact, and that there was nothing in the contract of purchase that rendered it voidable at their instance. "Certainly a creditor of a corporation, when he becomes such," says the court in *Farmers' State Bank* v. *Empey,* 35 S. D. 107, 150 N. W. 936, "is under no obligation to ascertain what representations, if any, may have been made to the stockholders to induce them to become such." Hence, it follows that if one's name appears with his consent upon the stock book of the bank as a stockholder within sixty days prior to the failure of the bank, whether induced by fraud or not, he is liable to the creditors for his assessment. He cannot permit this situation to exist and then be heard to say to creditors that he is not liable because he was only a conditional owner or was led to purchase his stock through the false representations of the officers of the bank, since the beneficiaries of this liability, the creditors, know nothing of the condition or the fraud, and are justified in treating the stock list as he and other shareholders have permitted or caused it to appear. The fact that fraud would render the contract of purchase voidable as against the person who committed it or the bank for whom he acted would not make it so as against the creditors.

The Supreme Court of the United States in construing paragraph 5151 has decided that the fraud of an officer of a bank in inducing one to purchase its stock cannot be shown in a suit to recover an assessment after the failure of the bank. This proposition was first discussed in *Scott* v. *Deweese,* 181 U. S. 202, 45 L. Ed. 822, 21 Sup. Ct. Rep. 585 (see, also, Rose's U. S. Notes), the court using this language:

"The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection but to give confidence to all dealing with national banks in respect of their contracts, debts and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position."

In *Ryan* v. *Mt. Vernon National Bank*, 224 Fed. 429, 140 C. C. A. 123, the United States Circuit Court of Appeals in discussing this question used the following language:

"In our opinion, plaintiff is not entitled to the relief prayed for against the receiver. The creditors are entitled to have the statutory liability, which, for their security, the National Bank Act has imposed upon stockholders, enforced against all persons who were stockholders when the bank failed. At that date Ryan was a stockholder *de jure* and *de facto* of the Mt. Vernon Bank; indeed, he is so still. Whatever remedy he might have against Jennings for alleged false representations, or against the bank itself on any theory that it was responsible for the misrepresentations of its officer, he certainly can have no relief which would operate to annul or impair the rights of the creditors of the bank to have the assessment upon his 50 shares collected from him."

See, also, *Lantry* v. *Wallace*, 182 U. S. 536, 45 L. Ed. 1218, 21 Sup. Ct. Rep. 878 (see, also, Rose's U. S. Notes); *Brooks* v. *Austin* (Tex. Civ. App.), 206 S. W. 723; *Blackert* v. *Lankford*, 74 Okl. 61, 176 Pac. 532.

It is appellant's contention, however, that, inasmuch as the rule is that a contract induced by fraud is voidable at the instance of the defrauded party and when repudiated by him *in toto* must be treated as null and void *ab initio,* he was never a stockholder within the meaning of section 23 of the Federal Reserve Act, and therefore was not liable under it. The fact, it is argued, that one of the parties to the contract of purchase is a corporation does not affect the situation, because it, no more than an individual, has a right to perpetrate a fraud and profit by it. *Upton* v. *Engelhart,* Fed. Cas. No. 16,800. This contention would undoubtedly be correct if appellant and the bank were the only persons interested in the fund realized from the assessment, for the general rule as to fraud and its effect upon contracts would in that event apply. But the thing we are here concerned with is the enforcement of a statutory liability created solely for the benefit of the bank's creditors and not for the bank itself. By virtue of the statute alone the purchase of stock carries with it this liability, and no representations made by the officers of the bank to induce the purchase can justify a repudiation of the contract so far as it affects the creditors, for, as stated above, they are without knowledge of these inducements, and therefore have a right to assume, when the relation of creditor and debtor is established and as long thereafter as it may continue, that the stockholders at the time of insolvency, together with those who may have transferred their stock within sixty days prior thereto to financially irresponsible persons, will, if necessary, meet the debts and engagements of the bank to the extent of the par value of the stock held by them. It was not intended that they should rely wholly upon any particular stockholder or group thereof to take care of the indebtedness of the bank in case it fails,

but also upon the fact that every shareholder, being required to, will under such circumstances meet his stock assessment.

Hence, the mere ownership of stock within sixty days prior to the failure of the bank renders the owner liable, and this is true regardless of the length of time he may have held it. The moment he becomes a stockholder this liability accrues, and it remains during his ownership and for sixty days thereafter. There is no way by which it can be avoided, and if one does not care to assume it he should refrain from becoming the owner of stock. To say that his liability should accrue only after he has been a stockholder long enough to be estopped by reason of his acts as such from denying it is not in accord with the aim and purpose of the National Bank Act (13 Stats. 99), in creating it, or of the Federal Reserve Act in retaining it, as a part of the law on that subject.

There can be no question but that appellant became a stockholder of the bank, so far as the creditors were concerned, and, inasmuch as the question of fraud as an inducement to the purchase of the stock was immaterial as to them, the transaction by which he ceased to be one—that is, the return and redelivery of the stock to the bank—constituted, in effect, a transfer thereof within the meaning of section 23 of the Federal Reserve Act. It was not merely the re-establishment of the *status quo;* it was passing the title of something belonging to him, at least so far as the creditors were concerned, to another, and this, according to *Ex parte Okahara,* 191 Cal. 353, 216 Pac. 614, was a transfer. It was also such under the definition given by Bouvier:

"The act by which the owner of a thing delivers it to another person with the intent of passing the rights which he has in it to the latter."

See, also, *E. L. Cleveland Co.* v. *Chittenden,* 81 Conn. 667, 71 Atl. 935; *In re Gould's Estate,* 156 N. Y. 423, 51 N. E. 287.

The fact that the stock was not a part of that originally issued, but some the bank had taken as security for a debt is not, as argued by appellant, a matter of any importance. It was stock outstanding, and its owner was in no different position, so far as his liability thereon was concerned, than he would have been had it been original stock or some purchased from another stockholder; for instance, if he had bought it directly from Snyder, whose indebtedness to the bank it secured, rather than from the bank itself, the question of his liability for an assessment upon the ground that it was not original stock would not have been raised. It was of no concern to the creditors through how many or what particular persons the ownership of the stock passed; their only interest was in its ownership at the time of the insolvency of the bank, or within a period of sixty days prior thereto in case the owner at that time was financially irresponsible.

Inasmuch, therefore, as the answer sets up no defense, but in connection with the complaint discloses that appellee was entitled to judgment, the order that he recover the full amount asked for is affirmed.

ROSS and LOCKWOOD, JJ., concur.