[Civil No. 2421.   Filed June 2, 1926.]

[246 Pac. 763.]

## A. I. WINSETT, Appellant, v. H. J. SPURWAY, Receiver of the TUCSON NATIONAL BANK OF TUCSON, ARIZONA, a Corporation, Appellee.

1. BANKS AND BANKING — STATUTE IMPOSING LIABILITY ON "STOCK-HOLDERS" OF NATIONAL BANK FOR ASSESSMENT ON FAILURE OF BANK APPLIES EQUALLY TO HOLDERS OF ORIGINAL STOCK ISSUE OR . OF STOCK TAKEN BY BANK FOR INDEBTEDNESS (FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]).—Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689), imposing liability on stockholders of national bank for assessment on failure of bank, applies equally to persons purchasing stock of an original issue, or stock taken over by bank in satisfaction of indebtedness; term "stockholder" including every holder of a share of stock.

2. BANKS AND BANKING—RIGHT OF PURCHASER OF STOCK TO TERMI-NATE CONTRACT OF PURCHASE AT EXPIRATION OF YEAR DOES NOT MAKE HIS OWNERSHIP OF STOCK CONDITIONAL, NOR RELIEVE HIM FROM LIABILITY ON FAILURE OF NATIONAL BANK (REV. STATS. U. S., § 5210 [U. S. COMP. STATS., § 9773]; FEDERAL RESERVE ACT 1913, § 23 [U. S. COMP. STATS., § 9689]).—Contract of purchase of stock in national bank, giving purchaser and bank right to terminate it at expiration of a year, does not render purchaser's ownership of stock conditional as to creditors of bank having no notice thereof, in view of Revised Statutes of the United States, section 5210 (U. S. Comp. Stats., § 9773), and does not relieve purchaser of liability for stock assessment on failure of bank, under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689).

3. BANKS AND BANKING.--Fraud of bank officers in inducing stock-holder to purchase stock, unknown to creditors of bank, is imma-terial in determining liability of stockholders of national bank for assessment on failure of bank, under Federal Reserve Act of 1913, section 23 (U. S. Comp. Stats., § 9689).

See (1) 7 C. J., p. 769, n. 5.   (2) 7 C. J., p. 769, n. 5.   (3) 7 C. J., p. 774, n. 62.

APPEAL from a judgment of the Superior Court of the County of Pima.  Gerald Jones, Judge.  Affirmed.

Messrs. Curley & Pattee, for Appellant.

Messrs. Mathews & Bilby, for Appellee.

McALISTER, C. J.—The plaintiff in this action, the receiver of the Tucson National Bank, seeks to recover from A. I. Winsett an assessment of one hundred per cent upon fifty shares of the capital stock of that bank. From a judgment for the plaintiff for the full amount asked for, the defendant appeals.

The facts are very much the same as those in *Wehby* v. *Spurway, ante,* p. 274, 246 Pac. 759. It appears from the complaint that, prior to the failure of the bank on May 2, 1923, appellant became the owner of fifty shares of the capital stock of the bank, and that the same stood in his name on the books thereof until the fourteenth day of March, 1923, when he, with knowledge of the bank's insolvency and pending failure, transferred and sold it to one Maude Harrison; that on December 13, 1923, the Comptroller of the Currency of the United States levied an assessment of $100 upon every share of stock held by the stockholders at the time of the bank's failure, and directed appellee to collect it; that on December 20, 1923, appellee made demand upon Maude Harrison for the payment of the amount thereof, $5,000, but she wholly failed to pay the same or any part thereof; that he then demanded of appellant payment of the same, but he likewise failed to pay it.

The answer denies that appellant ever became the owner of the stock in question except conditionally, and alleges that, in order to induce him to purchase such stock, W. H. Land, vice-president and manager of the bank, falsely and fraudulently represented to him that the bank was then in a solvent and prosperous condition, and that its stock, with a par

value of $100, was well worth $130 per share; that, believing these representations and relying upon them, appellant entered into a written agreement with the bank by which he agreed to purchase fifty shares of its stock for $6,500, provided the vice-president of the bank would agree to arrange for and see that he was elected a member of its board of directors and chosen and retained as its attorney; that the agreement provided further that this arrangement might be terminated by either party within thirty days after the expiration of one year, upon a return of the stock and the purchase price thereof, if it had not proved satisfactory to either of them, and that appellant agreed to co-operate with Land in disposing of the stock in case disagreement or dissatisfaction arose; that pursuant to the agreement appellant executed and delivered his promissory notes for $6,500, and the bank delivered him five shares of stock and attached the other forty-five shares to the notes, to be retained by it until the appellant should elect whether he would retain or return such shares of stock in accordance with the terms of the foregoing agreement.

It further appears that about a year subsequent to the execution of the contract appellant learned for the first time of the fraud and deceit practiced upon him by said W. H. Land in representing the condition of the bank and the value of its stock, and that he notified the bank that the arrangement set forth in the agreement of December 21, 1921, had not proved satisfactory, and that he thereby tendered to it the shares of capital stock referred to in said agreement and demanded of it the return of the consideration therefor, but it refused to comply with this request and insisted that it was in a solvent and prosperous condition, and that its stock was well worth $130 per share when the agreement was executed and the shares of stock referred to therein de-

livered; that it was incumbent upon appellant under the terms thereof to co-operate with it in disposing of said stock; that through the co-operation of appellant with the bank said stock was later sold to one Maude Harrison, but that subsequent thereto and prior to its failure the bank purchased it from her and thereafter remained and now is the owner thereof; that in violation of its agreement and previous to the maturity of the notes and the discovery of the fraud and deceit it practiced upon him, the bank sold the notes to the City National Bank of ·El Paso, Texas, for a valuable consideration without notice of said agreement or fraud, and thus placed him in such a position that he was compelled to and did pay them upon demand of that bank.

The answer discloses further that the stock in question belonged to persons indebted to the Tucson National Bank for money borrowed, but that it had been turned over to the bank by them with the understanding that the bank would sell it and apply the proceeds thereof toward the liquidation of the indebtedness of its respective owners.

Appellee filed a motion to strike all of appellant's answer except its formal parts, and, it being granted, his motion for judgment upon the pleadings followed.

Three errors are assigned, but they raise in different ways only the question whether the defense set up in the answer is good. The court ruled that it was not, and the correctness of this holding must be determined by the provisions of section 23, Federal Reserve Act of December 23, 1913 (U. S. Comp. Stats., § 9689), which reads as follows:

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred

their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure.''

Appellant calls attention, first, to the fact that the stock purchased by him was not a part of the original issue, but was stock that had been sold and at the time of its transfer to him was held by the bank under authority to sell and apply the proceeds thereof to an indebtedness of its owner to the bank. We held in the Wehby case that this was wholly immaterial, but the proposition is argued at length in this proceeding, the appellant pointing out that the courts have always recognized a distinction between the status of an original issue of stock and stock that is acquired by the bank and resold. This is unquestionably true, but it is not apparent how such a distinction can affect this case, though it might if the action were one on a note given for the purchase price of stock or to enforce a contract for the purchase of the same. But whether one buys stock of an original issue or stock that has been previously sold and taken over by the bank in liquidation of an indebtedness due it, as both parties admit it has a right to do, is wholly immaterial so far as the statutory liability of a stockholder is concerned. The purchaser in either instance becomes a stockholder, and section 23, *supra,* provides that:

''The stockholders of every national banking association shall be held individually responsible,'' etc.

It will be observed that this section does not say that only those who own stock of an original issue

shall be responsible but uses a term, stockholders, which includes every holder of a share of stock. Whether it is stock which was previously issued to another and taken in by the bank in satisfaction of some indebtedness and resold by it, or original stock, its owner shares in the dividends and participates in the affairs of the bank, and to hold, notwithstanding this fact, that only holders of the latter are responsible for the liability the statute places upon stockholders would be to permit owners of the former to enjoy the benefits of the statute without requiring them to bear their part of its burdens.

Appellant contends that, under the contract of purchase, which gave each party the right to terminate it at the expiration of a year if either became dissatisfied therewith, he did not become an absolute owner of the stock, but only a conditional one, with the right to terminate or rescind within thirty days after the expiration of a year. The agreement did, it is true, confer this power, but the character of the ownership during this period is wholly immaterial, because, under the holding in the Wehby case, appellant, whatever may have been his situation as against the bank, was the absolute owner of the stock, so far as the creditors' and the stockholders' liability to them were concerned, until he sold and transferred it and for a period of sixty days thereafter if the bank became insolvent during this period and his transferee failed to meet it. And according to the record he sold and transferred the stock on March 14, 1923, or within the sixty days prior to the failure of the bank òn May 2, 1923, and his transferee, Maude Harrison, did not pay it though demand was made upon her to do so. Nothing further was required to bring him within the terms of section 23, *supra;* the fact that the contract itself gave him the right to terminate it at the end of a year, a thing entirely unknown to the creditors for whose benefit the lia-

bility was created, being insufficient to render his ownership of the stock conditional as to them. The stock was issued to him, and his name appeared as its owner on the list of stockholders the bank was required, under the provisions of section 5210 of the Revised Statutes of the United States (U. S. Comp. Stats., § 9773), to keep, and to permit one who has thus held himself out to those interested in the bank during his connection with it as a stockholder to say that the condition he has led them to believe to be true is in fact untrue would enable him to escape the responsibility he assumed as an incident to the purchase of his stock, and result in defeating the very purpose for which the statute creating it was enacted. As said by the Supreme Court of the United States in *Lantry* v. *Wallace,* 182 U. S. 536–554, 45 L. Ed. 1218, 21 Sup. Ct. Rep. 878, 885 (see, also, Rose's U. S. Notes):

"But this is upon the ground that by allowing his name to appear upon the stock list as owner he represents that he is such owner; and he will not be permitted, after the bank fails and when an assessment is made, to assume any other position as against creditors. If, as between creditors and the person assessed, the latter is not held bound by that representation, the list of shareholders required to be kept for the inspection of creditors and others would lose most of its value."

The fact that appellant was induced through the fraudulent representations of the vice-president and manager of the bank to purchase the stock is, as held in the Wehby case, immaterial. The stockholders' liability was created solely for the benefit of the creditors, and there is nothing in this record which discloses that they had any knowledge whatever of these misrepresentations, hence appellant is in no position to urge the fraud of the bank's manager in defense of an action to enforce what the

statute says he shall pay its creditors. The Wehby case was decided wholly upon this proposition, and it is unnecessary to discuss it here. There is nothing in the facts of this case calling for the application of a different rule.

The judgment of the superior court is affirmed.

ROSS and LOCKWOOD, JJ., concur.