[Civil No. 3232. Filed June 13, 1933.]

[22 Pac. (2d) 1078.]

C. H. COLMAN, Appellant, v. JAMES B. BUTTON, Superintendent of Banks of the State of Arizona, in Charge of the Liquidation of the YUMA VALLEY BANK, a Corporation, Appellee.

Mr. A. J. Eddy and Mr. C. H. Colman, for Appellant.

Mr. R. N. Campbell, for Appellee.

142

ROSS, C. J.—This is an action by James B. Button, superintendent of banks, to enforce the constitutional and statutory liability of C. H. Colman as a stockholder of the Yuma Valley Bank, in course of liquidation. Judgment went in favor of plaintiff, and the defendant appeals.

The controlling facts are as follows: On February 18, 1929, the defendant subscribed and paid for 80 shares, at $25 per share, of the capital stock of the Yuma Valley Bank, thereafter to be organized to take over the assets and affairs of the Yuma National Bank then being liquidated. The Yuma Valley Bank was formally organized for business on May 10, 1929, and thereafter operated as a commercial bank until June 20, 1930, when on account of its failing condition it was closed and taken over by the superintendent of banks. No certificate of stock was ever delivered to the defendant, although demanded by him on at least two occasions after the bank's organization: Once in June, 1929, and once in October, 1929. A certificate in his favor for 80 shares, dated May 18, 1929, duly executed under seal of the corporation, still attached to stub, appears on the stock book of the bank, and in the records of the bank he was carried as a stockholder. The officers of the bank recognized the defendant was the owner of 80 shares of the capital stock but refused to issue and deliver a certificate therefor to defendant, contending that defendant at the time he subscribed for shares verbally agreed to pledge or escrow his stock as a guaranty of certain of the assets of the Yuma National Bank assumed or taken over by the Yuma Valley. Bank. The defendant denies ever making such an agreement. The court made findings of fact but did not find on this issue. During the time the bank operated there were two stockholders' meetings, to neither of which did defendant go although noti-

fied. To the last one, in January, 1930, he sent word through the secretary of the corporation that he was not a stockholder and demanded that his name be stricken from the list of stockholders. Defendant took no legal steps to. get his certificate of stock, recover subscription money or damages, although he had, before the bank closed, consulted an attorney with a view of bringing some kind of action.

The defendant presents his contentions with the affirmation that he was not a stockholder in the Yuma Valley Bank on June 20, 1930, when it closed, or at any other time. If this is true, he of course is not liable. 14 Corpus Juris, pp. 1097, 1098. But we think under the admitted facts defendant was a stockholder. He paid his subscription in full, and having done that he became, in the proportion that his 80 shares bear to the whole number of shares, the owner of the capital stock of the bank. The fact that a certificate was not issued and delivered to him, it being only evidence of ownership of stock, did not make him any the less a stockholder. It deprived him or withheld from him only the evidence of his owner· ship. *Hook* v. *Hoffman,* 16 Ariz. 540, 147 Pac. 722; Fletcher, Cyc. Corporations (Permanent Ed.), vol. 11, § 5092; 14 C. J., p. 481, § 710. If the certificate of stock was wrongfully withheld from him by the bank or the custodian thereof, he had remedies to correct this wrong: (1) A suit in equity for specific performance to compel the delivery of the certificate; (2) damages for breach of the contract; or (3) an action in *assumpsit* for money had and received. *Watkins* v. *Record Photographing Abstract Co.,* 76 Or. 421, 149 Pac. 478; Cook on Corporations, 8th ed., vol. 1, § 61. However, he pursued none of these remedies. He was, then, from the time of the bank's organization up to the day it closed, a stockholder.

Section 227 of the Revised Code of 1928 reads, in part, as follows:

"The stockholders of every bank shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements, of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares or stock. In case of the dissolution or liquidation of any bank, the constitutional and statutory liability of the stockholders must be enforced for the benefit of the creditors of such bank by the superintendent of banks or by any receiver."

The first sentence of this section is practically a rescript of section 11, article 14, of the state Constitution, which is almost word for word the same as section 5151 of the Revised Statutes of the United States (12 U. S. C. A., § 63) concerning the statutory liability of stockholders in national banks.

Incorporated in the contract of every purchaser and owner of shares of stock in a banking corporation are the provisions of the above statutes. These provisions are a part of his contract and he thereby agrees to the extent of the amount of his stock to be responsible to the creditors of the bank for all its contracts, debts and engagements. Michie on Banks and Banking, vol. 2, p. 113, § 28; *Coffin Bros. & Co.* v. *Bennett,* 277 U. S. 29, 48 Sup. Ct. 422, 72 L. Ed. 768. While in *Wehby* v. *Spurway,* 30 Ariz. 274, 246 Pac. 759, the question of the liability of the stockholder was under the federal statute, because of the similarity of that statute to our section 227, *supra,* the conclusion there reached is, we think, decisive of the question here. The defense in that case was that the stockholder had been induced to purchase his stock through the fraud of an officer of the bank, and we held that even though such defense were true it would not relieve the stockholder of his contractual

liability to the creditors of the bank. So in the present case, even though defendant's certificate of stock was wrongfully withheld from him by the bank or its officers, the creditors' right to the remedy provided by the Constitution and statute cannot be affected thereby. If the bank, or its officers, violated his rights as a stockholder, his remedy, if he has any, is against them. He cannot set up their wrongful act towards him as a defense to an action by the creditors of the bank founded upon his contract as a stockholder with or for them.

The defendant contends that there was a total failure of consideration because the evidence of his stock, although the stock was paid for, was never delivered to him. In an action between him and the bank the failure of the bank to deliver the stock might be considered. But it is immaterial in this action for the benefit of the creditors.

We think the judgment of the lower court was correct and accordingly affirm it.

McALISTER, J., concurs.