Delano v. Case.

## JOHN A. DELANO ET AL.
## v.
## GARDNER CASE.

1. BANKS—ACTION BY DEPOSITOR AGAINST DIRECTORS' NEGLIGENCE.— An action on the case by a depositor against the directors of a bank for gross negligence in allowing an insolvent bank to advertise and continue to do business, where the slightest examination of the bank's affairs by the directors would have disclosed the fact that the bank was utterly insolvent. *Held*, that such action will lie.

2. DUTIES OF DIRECTORS.—Directors are not merely agents, but are, as well, trustees for the bank, the stockholders and the depositors, and to each they owe duties for a violation of which the law will hold them liable.

APPEAL from the Circuit Court of Macoupin county; the Hon. W. R. WELCH, Judge, presiding. Opinion filed December 4, 1885.

Messrs. PALMERS, ROBINSON & SHUTT, for appellants; that the directors are not liable for mere non-feasance, cited Fusz v. Spaunhorst, 67 Mo. 257; Harman v. Tappenden, 1 East, 555; Zinn v. Mendel, 9 W. Va. 580; Hodges v. New England Screw Co., 53 Am. Dec. 637; Shearman & Redfield on Negligence, § 111; Crowley v. Smith, 31 Albany Law Journal, 471.

Messrs. GREENE, BURNETT & HUMPHREY, for appellee; as

to duties of directors, cited Morse on Banking, 116; Shea v. Mabrey, 1 R. I. Lea (Tenn.), 319 · United Society, etc., v. Underwood, 9 Bush (Ky.), 609.

CONGER, J. This was an action on the case. The declaration charges substantially that on the first day of July, 1877, "the Bunker Hill Bank," was a body corporate, etc., engaged in the business of banking, receiving money on deposit, etc., and so continued up to October 22, 1877, when it closed its doors and ceased payment. That on the 30th day of July, 1877, appellee was a creditor and depositor of said bank to the amount of $1,154.57, and that relying on the solvency of the bank he continued from time to time to make deposits up to and including October 6th, when the bank owed him for money so deposited and for interest, $5,000. That long before the 1st of July, 1877, and until it failed, the bank was insolvent and that appellee never received payment; avers that it was the duty of appellants, who were directors of the bank, to ascertain and know the financial condition of said bank, to examine at short intervals into its affairs, and if they had performed their duty in that respect they would have known by the exercise of ordinary care that the bank was totally insolvent long before and during all the time appellee was making his deposits. Charges that they wholly failed in this respect, but held out the bank to the public during all this time as financially safe and solvent. Whereby appellee was deceived and defrauded into making such deposits, and in consequence lost them. Trial in the circuit court and judgment for appellee for $2,370.50. Without attempting to give even a synopsis of the evidence we think it establishes upon the part of the appellants and their co-directors the grossest negligence and incompetency. After the bank had suspended and a full examination was had, it appeared that Beach, the cashier, and Compton, the assistant cashier, had been for some time systematically robbing it. The general ledger on Dec. 31, 1876, showed the total amount due depositors to be $11,350.73, while in truth the bank actually owed to depositors on that day $36,779.27, as shown by another

Delano v. Case.

book in the bank, called the individual ledger. On Sept. 18, 1877, the general ledger showed the amount due from the bank to depositors to be $10,368.65, whereas the true amount as shown by the individual ledger was $49,616.50, showing a discrepancy of $39,247.85. So too in the accounts showing the amounts of outstanding certificates of deposit on the 1st of September, 1877, the difference between the amount shown upon the general ledger and the true amount was $32,422.56. In short, it appears that during all the summer and fall of 1877 the difference between the amounts these officers were reporting to the directors and the examining committee, as the indebtedness of the bank, and the true amount was about $75,000. Mr. Mayfield, an expert, agreed upon by the parties, and appointed by the circuit court to make this examination, says: "The true condition of the bank at the dates named, as appearing from the books by my examination, was insolvent, very much so, and the books very plainly show it at the date of each and every exhibit I have attached hereto. An ordinarily careful examination of the books of the bank at any time during 1877 would have disclosed irregularities of the cashier and the insolvency of the bank. If they had examined the books in a proper manner they would have discovered the very glaring discrepancy in the condition of the certificates of deposit, as shown by the stub book and the general ledger. If the directors examined the books and counted the cash, they could locate the day of its first discovery." The degree of care and diligence on the part of the directory and the finance committee is shown by the testimony of the president, Mr. Klinefelter. He says: "That he was president of the Bunker Hill bank and was also a director and stockholder. Became president in the year 1870 and continued to be so until the failure of the bank in 1877. The defendants were all connected with the bank, at the time of the failure, as directors, and had been so connected with the bank before that time for three years. The stockholders elected the directors and the directors elected the officers. The bank ceased to do business October 20, 1877. The bank closed because it had been robbed by the cashier and assistant and was insolvent. Don't know how long before the

failure of the bank it was robbed. When it closed the money was all gone except about $8,000. Can not tell how much money there ought to have been in the bank. While he was president the affairs of the bank were managed by the directors. The directors met once a year to elect officers and declare dividends. About once a month the finance committee counted the money, and returned to Mr. Beach, the cashier. What he did with it he had no idea. The finance committee, in 1877, were directors Cross, Bahr and himself. Can not say that the finance committee at any time made any great investigation. It met once a month as a general thing, would look over the accounts, count the money and hand it back to the cashier. Did not examine and verify the books, and compare their statements with the assets, etc., which the books called for ; and no such examinations were made by any of the directors to his knowledge. Beach was cashier of the bank from the time of its organization. Compton was first a clerk, and then assistant cashier many years. Some ten months before the failure of the bank witness suspected that Compton was stealing from the bank. Witness thought that he was spending too much money buying property, living extravagantly in Bunker Hill, and traveling. After he conceived the suspicion in regard to Compton, he and Cross went around and notified the directors of his belief that Compton was stealing from the bank. They refused to believe it. Saw all the directors except Bauman. They would not believe anything was wrong. Nothing more was done, but witness went to the bank and told Beach and Compton what his suspicions were. This was about ten months before the failure. Supposes that the reason that the directors would not believe him was that they thought Beach and Compton honest men. They were such good praying men. He thought after he talked to them that they were honest; and no more examination was made afterward than was usual before. The assets of the bank consisted of notes, accounts, real estate and money. He made no examination after the failure." It appears that the following card had been published in the local paper for a considerable time before the failure of the bank :

"Bunker Hill Bank, Bunker Hill, Illinois, incorporated by

the legislature, capital fifty thousand dollars. Authorized capital, two hundred thousand dollars. A general banking business transacted, collections made, and proceeds promptly remitted. Interest allowed on time deposits. Special attention paid to savings department. Interest compounded every six months. Exchange sold on Great Britain or Europe.

JOHN KLINEFELTER, President.<br>J. A. DELANO, Vice President.

JAMES A. BEACH,
    Cashier."

Upon the foregoing facts the question arises, are the directors liable individually to depositors in an action on the case. There is no question that agents of individuals or corporations are not, in general, liable to third persons for mere non-feasance, or omission of duty in the course of their employment. Their liability in such case is solely to the principal. Appellants insist, with great earnestness, that they stand upon the same footing, and their liability is to be determined by the same general principles as other agents, and they cite some authorities which seem to sustain this view. In Harman v. Tappenden, 1 East, 555, it was held that "to support an action against an individual on account of his vote, or other act done by him as a member of a corporation, it is not enough that he acted erroneously or by mistake, but it must appear that he acted willfully and maliciously or fraudulently with intent to injure the plaintiff." This case, however, grew out of an alleged negligent action of the corporators, by which another corporation lost certain rights and privileges as a member of a fish corporation, and in our judgment bears no analogy to the case at bar. In Vose v. Grant, 15 Mass. 505, where the facts were that plaintiff had bought up the bills of an insolvent bank, and was complaining of the official action of the proprietor in dividing up the capital stock of the bank some three years prior thereto, the court say if plaintiff intended when buying the bills on speculation to buy also a right of action against the stockholders for a tort previously committed by them, his purpose was unlawful and no such right of action

was or could be assigned to him. It is also held that the stockholders were not liable to an action on account of a mistaken opinion, or vote, expressed or given at a legal meeting. But the court are constrained to say in conclusion that the creditors ought to be paid out of those funds formerly withdrawn, and suggest a possible remedy in chancery. In Fusz v. Spannhorst, 67 Mo. 257, the question before the court is one of statutory and not common law liability, and hence the remarks of the court upon this question can only be regarded as *dicta*.

The case of Conley v. Smith, 46 N. J. 380, was an action for deceit by a depositor against a director of a bank, for false representations made as to the solvency of the bank, and the case turned upon the question whether it was necessary to show that the party making the representations knew at the time they were false, and it was held such knowledge was essential to sustain the action. The case of Zinn v. Mendel, 9 W. Va. 580, holds the doctrine as contended for by appellants, that directors of banks are only liable to third persons for misfeasance. There are other cases which allude more or less directly to the question, but they are generally affected by statutory provisions, and are therefore of no authority as definitions of common law liability.

We are thus left with but little assistance from adjudicated cases. Those holding the doctrine contended for by appellants, seem to base it entirely upon the idea that directors of banks are no more than mere servants and agents of the corporation, owing no duty to the public, and hence not liable for any omission, or negligence, however gross and reckless. We can not concede that directors of banks are no more than mere servants and agents. They are this it is true, but they are more. They are trustees for the bank, the stockholders and the depositors, and to each they owe duties, for a violation of which, the law will hold them liable.

In Morse on Banking, 116, it is said : " If bank directors do not manage the affairs and business of the bank according to the charter and in good faith, they will be liable to make good all losses which their misconduct may inflict upon the

Delano v. Case.

stockholders, creditors or both." "Bank directors are not mere agents, like cashiers, tellers and clerks. They are trustees for the stockholders, and as to their dealing with the bank, they not only act for it and in its name, but in a qualified sense, are the bank itself. The community have a right to assume that the directory does its duty, and to hold them personally liable for neglecting it. Their contract is not alone with the bank. They invite the public to deal with the corporation, and when one accepts their invitation, he has a right to expect reasonable diligence and good faith at their hands, and if they fail in either they violate a duty they owe not only to the stockholders, but to the creditors and patrons of the corporation." United Society of Shakers v. Underwood, 9 Bush. 609; see also Shea v. Mabrey, 1 R. J. Lea (Tenn.) 319; Thompson's "Liability of Directors," 395; Percy et al. v. Millandon, 3 Louisiana, 585. In the latter case, upon the ground of gross negligence, or wanton disregard of duty, the directors of a bank were held responsible to the stockholders for losses to the bank occasioned by acts of the following character: Permitting the president and cashier to discount notes from the funds of the bank, without the assent and intervention of five directors as required by the rules and regulations of the bank. Permitting purchases to be made of the stock of the bank out of the funds of the bank by the president and cashier, at a rate above the known true value thereof, or allowing them to take and use the money of the bank, contrary to the rules and regulations thereof. And Mr. Wharton, in his work on negligence, after quoting the above language, adds: "How far similar doctrines will be adopted in courts sitting under the jurisdiction of the common law remains for future discussion in those courts, as I am not aware that the question has as yet been directly litigated therein. But there can be little doubt that these doctrines are just conclusions from the general law of mandates." Sec. 510. Ordinarily the character of the directory for integrity and business capacity measures the degree of confidence reposed in the corporation by the public. Were depositors when intrusting to a bank their entire fortune, to be informed that the directors, upon whose honor

and careful watchfulness they were relying, owed them no duty, were under no obligations to take at least reasonable precautions to guard their money from the itching fingers of dishonorable officials, they would certainly hesitate long before surrendering it upon such terms. There are many risks and uncertainties against which a prudent business man never expects the directors or managers of banks to insure him. He knows that for the usual hazards of business he must look to the bank alone. That for the ordinary negligence of directors they are responsible alone to their principal, but for such gross negligence or incompetency as shows a reckless disregard of their duty to care for and protect the funds committed to their charge, we think they are directly responsible to the depositor. In this case the directors were notified ten months before the failure, by the president, of his suspicions that Compton was stealing from the bank, when the slightest examination would have exposed the true state of affairs and protected subsequent depositors. No examination whatever was made. Under such circumstances there was clearly another duty which the directors owed to the community. If they knew that the bank was insolvent, or if their suspicions were aroused, and they recklessly closed their eyes and made no effort to discover the truth, it was their duty not to receive the money of depositors ignorant of the true state of affairs. To do so when they had but a suspicion of the danger would be a great wrong, and if with full knowledge, would now be a felony. If we are correct in these views, it follows that appellants owed a duty to appellee, which they have not performed, in consequence of which he has been injured and for which he ought to have a remedy, for it is a maxim of the common law, that a man specially injured by the breach of duty in another should have his remedy by action.

The judgment of the circuit court will be affirmed.

Affirmed.