**KIMBRIEL, Adm'x, v. STATE ex rel. WALCOTT, Bank Com'r.**

No. 15024—Opinion Filed Dec. 23, 1924.

Rehearing Denied Feb. 17, 1925.

**1. Banks and Banking—Statutes Superseding General Statutes on Corporations.**

The system of laws, regulating banks and banking in this state, vitalizing the constitutional mandate, being special acts applying only to banks and trust companies, they supersede the general laws relating to winding up the affairs of other corporations.

**2. Same—Winding Up Affairs of Insolvent Bank—Powers of Bank Commissioner.**

This system of laws confers upon the Bank Commissioner, or some person under his control and direction, the sole and exclusive jurisdiction to take possession of an insolvent bank and proceed to wind up its affairs and enforce the personal liability of the stockholders, officers and directors.

**3. Same—Meaning of "Wind Up."**

The term "wind up," when construed in connection with the context of the section in which it is found and in connection with the broad terms of section 4165, Comp. Stat. 1921, undoubtedly embraces the entire process of settling the accounts and liquidating the assets of insolvent banks for the purpose of distribution among creditors and dissolving the corporation.

**4. Same—Stockholders' Liability — Claims Against Bank as Set-Off.**

Claims against an insolvent bank cannot be set off against the superadded liability of the stockholder.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Bryan County; Porter Newman, Judge.

Action by the State of Oklahoma ex rel. Roy Walcott, Bank Commissioner, against A. L. Kimbriel for recovery of the sum of $1,000. Judgment for plaintiff. Defendant brings error. Affirmed.

McPherren & Hannah, for plaintiff in error.

M. W. McKenzie and Utterback & Stinson, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Bryan county, Okla., by the State of Oklahoma ex rel. Roy Walcott, Bank Commissioner, defendant in error, plaintiff below, against A. L. Kimbriel, plaintiff in error, defendant below, to recover the sum of $1,000, double liability on bank stock of the First State Bank, of Durant, owned by the plaintiff in error. The parties will be referred to in this opinion as plaintiff and defendant, as they appeared in the lower court.

The defendant died and the cause was revived in the name of Martha V. Kimbriel, as administratrix of the estate of A. L. Kimbriel, after judgment was pronounced in the lower court pending the appeal.

The petition, among other things, alleged that the First State Bank of Durant was a state bank, chartered by the state and doing business as such; that, on the 26th day of January, 1922, it became and was declared insolvent and placed in charge of the State Bank Commissioner, and that the same was being liquidated through Sam Swinney, liquidating agent, and that the Bank Commissioner, Roy Walcott, had full power and authority to collect the assets of said bank; that, at the time said bank was declared insolvent and placed in the hands of said Bank Commissioner, the defendant, A. L. Kimbriel, was a stockholder of said bank, owning ten shares of stock of the par value of $100 per share, and was, therefore, liable as said stockholders for the stock owned by him in the sum of $1,000; that the defendant had been notified and payment demanded, but that the defendant had failed and refused to pay the same and asked judgment for the sum of $1,000, with interest at six per cent. from the 26th day of January, 1922. A general demurrer was filed to the petition, which was overruled and exceptions reserved.

Defendant filed answer by way of general denial, denying that the bank was insolvent or that it had been declared insolvent by the Bank Commissioner; admitting that the Bank Commissioner had taken charge of the bank, and that he was the owner of ten shares of stock, but that the Bank Commissioner did not, on the date of taking charge of said bank, make an assessment against the stockholders of said bank, requiring payment of double liability; that, although suit had been filed by the State Bank Commissioner, there had been no judicial determination of the necessity for the collection of double liability from the shareholders, and no judicial determination as to the insolvency of the said institution; that the value of the assets of said bank exceed the liabilities, exclusive of any amount sought to be collected from the stockholders; that no necessity existed for making said assessment; that there had been no determination by the Bank Commissioner of the impairment of the capital stock of the bank and no assessment made of the stockholders

against said stock; that because of all things so set up in said answer, the defendant pleaded that the action had been prematurely brought, and that no action existed against the defendant at the time of bringing the action, and further set up as a defense that he was a depositor in the sum of approximately $1,000, which had never been paid to him by the said bank or the plaintiff, and that even if he should be liable as said stockholder, he should be allowed to have the amount of his deposit as an offset against the amount due as stockholder, and, therefore, he was in no way indebted to the plaintiff.

Special demurrer was filed to certain paragraphs of the answer, which was sustained in part and overruled in part, and exceptions reserved by both parties.

Plaintiff, thereupon, filed a reply by way of general denial.

On the 12th day of June, 1923, the cause proceeded to trial to the court, a jury having been specially waived. After determining that the burden of proof was upon the defendant, the defendant then demanded a jury trial, which was refused by the court, and exception reserved to said refusal by the defendant.

At the close of all the testimony in the case the court made special findings of fact and conclusions of law, in effect, that the plaintiffs should have and recover of and from the defendant the sum of $1,000 with interest at six per cent. from the 26th of January, 1922, until paid and that defendant was a depositor in said bank in the sum of $867.58, which defendant was not entitled to offset against his double liability as stockholder.

Motion for new trial was filed, heard and overruled; exceptions reserved and the cause comes to this court regularly upon appeal by the executrix of the defendant.

The attorneys for defendant set up 12 assignments of error, but in their brief submit the same under two main questions, which are as follows:

"First, that the plaintiff's suit was prematurely brought for the reason that no showing was ever made by the plaintiff that the Bank Commissioner had ever made an assessment for the payment of stockholders' additional liability; that no showing was ever made that the court had made a judicial determination as to the necessity for the collection of the additional liability; that no showing was made by the plaintiff as to the amount and value of the assets of the bank and the liabilities there-

of, or the amount of the liability of the stockholders."

"The second question is whether a stockholder in a state bank has the right to offset any statutory liability as such stockholder with the amount of any deposit he had in the bank at the time it was taken over by the Bank Commissioner for liquidation."

Upon examination of the record, it appears that there was sufficient left in the answer, after the demurrer was sustained, setting up the issue as to whether the bank was solvent or insolvent, after it was taken over by the Bank Commissioner, and as to whether the value of the assets of the bank was in excess of the amount of liabilities of said bank, exclusive of the amount sought to be collected from the stockholders on their double liability and as to whether there was any necessity of making the assessment against the stockholders, and yet there was no attempt on part of the defendant to prove these allegations of his answer.

The proof established that defendant was the owner of ten shares of stock of the value of $1,000; that the bank was insolvent and was taken over by the Bank Commissioner on the 26th day of January, 1922; that, after over a year spent in winding up its affairs, it was shown by the evidence that it could only pay approximately 20 per cent. to its creditors, after including the double liability of the stockholders, and that defendant had a credit as a depositor in said bank in the sum of $867.58, which he was entitled to as a balance at the time it was taken over by the Bank Commissioner.

The attorneys for defendant contend that their client was deprived of a trial by a jury, but on an examination of the record it is disclosed that when the cause was called for trial the parties specially waived a trial by the jury in open court through their attorneys, and no demand was made for a jury until the court determined that under the pleadings the burden of proof was upon the defendant, and then the defendant demanded a jury trial. We think, under section 532, Comp. Stats. 1921, that the request for a trial by a jury in this cause came too late. The parties had their opportunity to have the issues of fact tried by a jury, but having specially waived this right, the defendant was not in a position to demand a jury as a matter of right.

It is urged by attorneys for defendant that this action was prematurely brought for the reason that no showing was made that the Bank Commissioner had ever made an assessment for the payment of stockholders'

additional liability, or that there had ever been any judicial determination as to the necessity for the collection of the additional liability, and that no showing had been made as to the assets and liabilities of the bank.

The Constitution of this state specially authorized the Legislature to pass such general laws to control banks and banking and to provide for a banking board, under the control of a Bank Commissioner, and to provide for the protection of depositors and individual stockholders, and in carrying out this mandate the Legislature of this state has passed laws regulating banks and banking, and these laws have been given a liberal construction by this court so as to effectuate the constitutional mandate.

This court, in a well-considered opinion written by the late Mr. Justice Kane, in the case of State ex rel. Short, Attorney General, v. Norman, Judge, 86 Okla. 36, 206 Pac. 522, reviewed at length the constitutional provisions and the acts of the Legislature upon this subject, and in that case the Bank Commissioner found and declared the Bank of Commerce of Okmulgee. Okla., to be insolvent and proceeded to take possession thereof with all its assets, for the purpose of winding up its affairs and to enforce the personal liability of its stockholders, officers and directors, and instituted suits against the stockholders and directors of the bank for the purpose of reducing its assets to cash and paying the unsecured depositors, as provided by law, and instituted an action against one of the stockholders to recover the double liability as prescribed by statute, which action was contested by the stockholder, who applied to District Judge Norman for the appointment of a receiver to take charge of the assets of the bank, and a receiver was appointed by Judge Norman and the above action was brought by the Attorney General for a writ of prohibition, prohibiting the district judge from interfering with the due administration of the affairs of the bank through the Bank Commissioner, and the court granted the writ and by its order made it permanent. In passing upon the authority of the Bank Commissioner, this court, in the opinion, said that the section of the statute placed the affairs and assets of the bank under the control of the Bank Commissioner and that the authority for so doing seems too clear for any serious controversy to arise over its proper exercise, and in the language of the opinion:

"Whenever any bank shall voluntarily place itself in the hands of a Bank Commissioner, or whenever the Bank Commis-

sioner shall become satisfied of the insolvency of any such bank, he may, after due examination of its affairs, take possession of said bank and its assets, and proceed to wind up its affairs and enforce the personal liability of the stockholders, officers, and directors."

And the court further said:

"The Bank Commissioner was seeking to enforce the liability of a stockholder in the action in which the receiver was appointed. It seems to us that, in performing the various acts hereinbefore set out, the Bank Commissioner was but performing his plain, constitutional and statutory duties. The mandate of the Constitution, as we have seen, is that general laws shall be enacted providing for the creation of a Banking Department to be under the control of a Bank Commissioner with sufficient power and authority to regulate and control all state banks. This mandate, we think, has been thoroughly and completely carried out by the various Legislatures dealing with this subject."

We are of the opinion that, under the language used by the court in the above case and under sections 4122, 4133 and 4135, Comp. Stat. 1921, the Bank Commissioner, in the instant case, was fully and thoroughly authorized to take charge of the assets of the failed bank, which include the double liability of the stockholders, and under the evidence in the case that the total assets of said bank were only sufficient to pay approximately 20 per cent. of the liabilities of said bank. The statute provides that the Bank Commissioner shall take charge of the books, records and assets of a failed bank, collect debts, dues and claims belonging to it, and proceed to wind up its affairs and to enforce the personal liability of its officers, directors and stockholders. These are very broad and comprehensive directions and unless they are limited by some other provisions of the banking law, they empower the Bank Commissioner to do everything necessary to wind up the affairs of an insolvent bank, including the sale of assets and the distribution of the proceeds among the creditors. The term "wind up," has been construed by this court to mean that it "embraces the entire process of settling the accounts and liquidationg the assets of failed banks for the purpose of making distribution and dissolving the corporation." State v. Norman, supra.

It is urged by attorneys for defendant that the defendant should have been permitted to offset his double liability in the amount of the balance to his credit on deposit in said bank, and they say that the Supreme Court of Oklahoma has never passed

squarely upon this question, and urge that the liability of a stockkholder comes under the same classification as other indebtedness, and that this court has held that on other general indebtedness the debtor may offset a debt due him from a bank. This contention might be correct if it were another kind of indebtedness than the one prescribed by statute. If this were a personal debt due from the defendant to the bank itself, the contention of attorneys might have some force and could be properly urged here, but this being a liability, created by statute, not for the protection of the bank, but for the protection of its depositors and creditors, and being a special statute applicable to the special business of banks and banking, "the system of laws vitalizing the constitutional mandate, being special acts applying only to banks and trust companies, they supersede the general laws relating to winding up the affairs of other corporations." State ex rcl. Short, Atty. Gen., v. Norman, Judge, supra.

The more reasonable rule, in our opinion, is laid down by the Supreme Court of the state of Washington, in the case of Duke v. Force, 208 Pac. 67, wherein the court says:

"To the point that claims against an insolvent bank cannot be set off against superadded liability may be cited a great number of cases, the reasons for the decisions of which are that the two claims are not in the same right, one of them being in favor of creditors against the stockholders, and the other in favor of the stockholders against the bank, and further that the adoption of any other rule would result in a preference of the stockholders over the other creditors. Reference may be made in this connection especially to the cases of Mosler Safe Co. v. Guardian Trust Co., 208 N. Y. 524. 101 N. E. 786: Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273; Williams v. Rose (D. C.) 218 Fed. 898."

Then, the general principle contended for by counsel for defendant, in our opinion, has no application here. The stockholder should be put in the same attitude relative to his balance on deposit in the bank as other depositors and creditors and should not be permitted to get 100 cents on the dollar, while other creditors only receive 20 cents on the dollar, and should not be permitted, in our opinion, to escape paying into the general fund, as provided by the statute, the additional liability on the amount of stock owned by him for the general benefit of creditors.

We are, therefore, of the opinion that the judgment of the trial court should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1, 2, 3) 7 C. J. p. 732, § 485; (4) 7 C. J. p. 577, § 108.