## PARIS v. BECKNER et al.

No. 19061.   Opinion Filed March 18, 1930.

Rehearing Denied June 17, 1930.

Ben F. Williams, Sam S. Harlan, Homer H. Cowan, and S. A. Horton, for plaintiff in error.

Wilson & Wilson and Hardie & Grim, for defendants in error.

TEEHEE, C.  In this cause the parties occupy the same relative positions as they occupied in the trial court.  They will be so designated here.

The plaintiff, C. B. Paris, was a general depositor of the Security State Bank of Wanette, of which the defendants O. L. Beckner, J. M. Schoemann, E. E. Lightner, W. H. Skinner, and three others who are not parties here, were the directors.

On January 1, 1924, the bank closed its doors, at which time plaintiff's deposit account with the bank was $413.75.  On July 31, 1925, plaintiff sued defendants to recover damages of them in the amount of his deposit account.  By his petition he alleged, to wit:

"Plaintiff, for his cause of action against the defendants and each of them, alleges that prior to January 1, 1922, the Security State Bank of Wanette, Okla., was organized as a state bank under the banking laws of the state of Oklahoma.  That at all times subsequent to January 1, 1922, the defendants above named were the directors of said bank; and, as such directors, had charge of the affairs of said bank and were such directors during the years of 1922 and 1923.

"That said bank was insolvent at all times and dates since January 1, 1922, which fact of insolvency the defendants and each of them knew.  That said bank was insolvent for the reason that the actual cash market value of its assets was insufficient to pay its liabilities.  During the times hereinafter mentioned, said bank was unable to meet its creditors in the usual and customary way.  That during said times and dates hereinafter mentioned, the said bank did not keep its reserve as required by the banking laws of the state of Oklahoma.  That during said insolvency, and at the time when said bank was insolvent, the said directors above named and each of them permitted deposits to be made in violation of law, and openly solicited deposits to be made, well knowing that said bank was insolvent, which fact of insolvency was unknown to plaintiff.

"That on or about the —— day of ——, and at various times during the year of

1923, the plaintiff deposited with said bank various sums of money; and that on or about January 1, 1924, the said bank was taken over by the Banking Board of the state of Oklahoma, at which time this plaintiff had on deposit with said bank the sum of $413.75, the same having been received by the directors of said bank, and said bank and its officers as a deposit subsequent to the time the said bank had become insolvent, with the knowledge of said defendants and each of them.

"That on the last day the said bank was open for business, when said directors and each of them knew that said bank would have to close its doors immediately, to wit: On December 28, 1923, said directors permitted said bank to receive deposits in the sum of $8,308.16 in violation of the banking laws of the state of Oklahoma.

"That the assets of said bank will not pay in excess of ten cents on the dollar, and that by reason of said defendants having received the deposits of this plaintiff at the time it was insolvent, and in violation of the law, the plaintiff is damaged in the sum of $413.75, and for which amount this plaintiff is entitled to recover against the defendants and each of them.

"The plaintiff further alleges that the defendants violated, during the time they were insolvent, all of the banking laws of the state of Oklahoma, for in that they loaned money to the officers and directors of said bank in violation of law; they permitted officers of said bank to discount worthless paper in large quantities. They made false reports to the Banking Department of their financial condition; and after said bank had become hopelessly insolvent, said defendants caused a report to be made that the bank was in good condition, and that $50,000 worth of new capital had been placed in said bank, when, in truth and in fact, said officers and directors above named, and each of them, had attempted to withdraw all of their own funds from said bank and had sought to charge off worthless paper; but, in doing so, attempted to acquire all of the real property of said bank.

"That the amounts of money loaned and the discounts made in violation of law, the falsity of the reports made to the Banking Board, and the details thereof, are peculiarly within the knowledge of these defendants. They have in their possession, and have had at all times, the facts in relation to these various transactions. Therefore, the plaintiff is unable to allege, in detail, the manner and method used by these defendants in violation of the law."

To the petition the defendants named demurred, to wit:

"Comes now the defendants above named, and demur to the amended petition heretofore filed in said cause by the plaintiff, and for grounds thereof state:

"1. That the said plaintiff has no legal capacity to sue.

"2. That there is a defect of parties plaintiff appearing on the face of the petition.

"3: That said petition contains two or more causes of action improperly joined.

"4. That said petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against these demurring defendants, or either of them, nor to entitle the plaintiff to the relief in his petition demanded as against these demurring defendants, or either of them, or any part thereof."

The demurrer was sustained for that the petition did not state a cause of action. Plaintiff elected to stand on his petition, whereupon the court rendered judgment for the defendants.

The demurrer questions the right of a single depositor, among many of the bank, to bring a separate action for damages in the amount of his debt owing to him by the bank, and recover judgment therefor against the directors, though the allegations of his petition be true, and though the bank is then in the hands of the State Bank Commissioner for the purpose of liquidation as provided by the banking laws of the state.

The rule of test of plaintiff's right to maintain his action is to be found in section 4119, C. O. S. 1921, read with section 4128, C. O. S. 1921. While section 4119, since the accrual of plaintiff's cause of action, has been amended, the relevant part here remains as a part of the existing law, which provides:

"Any director, officer, or other person, who shall participate in any violation of the laws of this state, relative to banks and banking, shall be liable for all damages which the said bank, its stockholders, depositors, or creditors shall sustain in consequence of such violation."

Section 4128 provides:

"No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold or silver certificates, or currency, or other notes, bills, checks or drafts, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank who shall knowingly violate the provisions of this section, or be accessory to or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $5,000, or by imprisonment in the penitentiary not exceeding five

years, or by both such fine and imprisonment."

The force of these provisions was considered by this court in Hughes v. Martin, 81 Okla. 89, 196 Pac. 951, which involved a state of facts in several particulars similar in effect to that of the case in hand. . The court there said:

"Are these provisions of the statute broad enough to cover the transaction alleged in the petition, the truth of which is admitted by demurrer, We think the foregoing question must be answered in the affirmative.

"When, a depositor is in the act of drawing his funds from a bank, but he is induced by false representations by an official of the bank to permit such deposits to remain in the bank and to accept time certificates of deposits therefor, it is equivalent to such bank receiving on deposit such money. The provisions of the statutes further provide that any official, director, manager, member, party, or managing party of any bank, who shall knowingly violate any provisions of this statute, or be accessory to, or permit or connive at the receiving or accepting of any such deposit, shall be guilty of a felony. It would seem that it is too clear for argument that the defendant, under the admitted allegations of the petition, violated both the spirit and the letter of the provision of the statute quoted. If this deduction is well made, and we feel that no doubt can exist, then section 262 of the Revised Laws quoted (this being said section 4119) certainly makes such officer personally liable for the damage sustained, because this section makes any director, officer, or other person, who shall participate in any violation of the law of the state relative to banks and banking, liable for all damages which the said depositor shall sustain in consequence of such violation. Had the defendant not misrepresented the condition of the bank, the plaintiff would have withdrawn his money; that is, provided the bank had sufficient to pay it.

"Had the defendant not represented that the bank was solvent when he knew at the time that the bank was insolvent, the plaintiff would have sustained no damages; but he relied upon the representations made, and, as a consequence thereof, permitted his money to remain in the bank and accepted certificates of deposit from the bank as evidence of the indebtedness.

"On account of the misrepresentation and the defendant inducing the plaintiff to permit his money to remain on deposit, the defendant vio'ated the provisions of the statutes. As a result of this violation, the plaintiff lost his money and the defendant became liable therefor."

These statutes were a part of the Banking Code adopted at the first Legislature of the state pursuant to section 1, art. 14, of the state Constitution, which commanded:

"General laws shall be enacted by the Legislature providing for the creation of a Banking Department to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate with sufficient power and authority to regulate and control all state banks, loan, trust and guaranty companies, under laws which shall provide for the protection of depositors and individual stockholders."

In principle, section 4119 is not unlike the law in this relation existent at its adoption, which had received consideration in Winfield v. Ott, 7 Okla. 512, 54 Pac. 714. That case was brought by a depositor against a director to recover by judgment a sum equivalent to the amount of the depositor's account made with a bank when it was insolvent, and lost to him by reason of its insolvency, as here. In sustaining the action, the court said:

"The citizens of the state, subject to the law-making power, and claiming the statutory privilege under it of organizing a bank or banking institution, must do so upon such terms as the statute prescribes. If they undertake the rights, they must assume and be subject to the duties prescribed by the statute. The duties and liabilities are correlative of the rights and privileges to which they seek, by incorporating under the statute, to become entitled. They cannot exercise one without being subject to the other. It is a matter of free choice. If an individual in this territory undertakes to join with others, and to become a director or 'other person or officer' in the direction and management of a bank or banking institution incorporated under the statute, he is subject to the duties prescribed by the statute, and must discharge them, and is responsible for their discharge, in the very terms prescribed by the statute. The statute makes it the duty of all such 'persons or officers' to know the condition, and then that 'the failure to know its financial condition shall be no defense to any prosecution or civil action brought under the provisions of this act.' The Legislature had the power to prescribe the terms upon which banks and banking institutions should be carried on in this territory. It saw fit to declare that all persons who are mentioned in section 1—the officers and managers and directors of such an institution—who held themselves out as the responsible and intelligent managers of it, should not exploit a vain and empty credit for the purpose of getting the commercial or financial benefit of a connection with such an institution, without imposing upon such persons a correlative liability for its debts, if the institution was permitted by them to receive deposits after it had become insolvent."

Courts of other jurisdictions have given like construction to statutes identical in substance and principle with section 4119, in like cases. In illustration, see Delano v. Case, 17 Ill. App. 531, 121 Ill. 247, 12 N. E. 676, 2 A. S. R. 81; Seale v. Baker, 70 Tex. 283, 7 S. W. 742, 8 A. S. R. 592; Cassidy v. Uhlman, 170 N. Y. 505, 63 N. E. 554; Mallon v. Hyde, 76 Fed. 388; Forbes v. Mohr, 69 Kan. 342, 76 Pac. 827; Ramsey Petroleum Co. v. Adams, 119 Kan. 844, 241 Pac. 433; Ramsey v. Adams, 122 Kan. 675, 253 Pac 416; Ferry v. Ramsey, 277 U. S. 88, 72 L. Ed. 796, 48 Sup. Ct. 443; Tate v. Bates, 118 N. C. 287, 24 S. E. 482, 54 A. S. R. 719; Bane v. Powell, 192 N. C. 387, 135 S. E. 118; Bailey v. O'Neal, 92 Ark. 327, 122 S. W. 503, 135 A. S. R. 185; Cummings v. Winn, 89 Mo. 51, 14 S. W. 512; Ivie v. Bailey, 319 Mo. 474, 5 S. W. (2nd) 50, 59 A. L. R. 881; 1 Morse, Banks and Banking (6th Ed.) section 130.

We think the law is explicit, and, under the admitted allegations of his petition, gives to the plaintiff. at the bar a right of action against the defendants analogous to the well-known action on the case at common law. While this was not so reflected from the syllabus in the Hughes Case, that was the effect of the construction there given to these statutes. Therefore, it must follow that directors of a state bank, who participate in the violation of the laws of the state relative to banks and banking by permitting or conniving at the reception of deposits with knowledge that the bank is then insolvent, are individually liable to a depositor for the damage sustained by him by reason of such violation of the law, and in that event a single depositor may bring an action against the directors to recover of them the amount of his damage for his sole benefit, unless, as is contended by defendants, the liability thus fixed by section 4119 is restricted by section 4165, C. O. S. 1921, to the benefit of creditors collectively, and enforceable only at the suit of the State Bank Commissioner.

In that relation, section 4165 provides:

"Whenever any bank or trust company organized or existing under the laws of this state shall voluntarily place itself in the hands of the Bank Commissioner, or whenever any judgment shall be rendered by a court of competent jurisdiction, adjudging and decreeing that such bank or trust company is insolvent, or whenever its rights or franchises to conduct a banking business under the laws of this state shall have been adjudged to be forfeited, or whenever the Bank Commissioner shall become satisfied of the insolvency of any such bank or trust company, he may, after due examination of its affairs, take possession of said bank or trust company and its assets, and proceed to wind up its affairs and enforce the personal liability of the stockholders, officers and directors."

It here may be observed that the force of this provision was not involved in the Hughes Case, as there the record showed that the action was brought subsequent to the close of the administration of the bank's affairs by the State Bank Commissioner, so that this phase of the case was not thereby determined.

Of the cases by this court cited by defendants as supporting their contention, they particularly rely on State ed rel. Freeling v. Quigley, 93 Okla. 296, 220 Pac. 918, and City of Ada v. Spencer, 121 Okla. 217, 248 Pac. 1005, which it may be said have a more direct bearing on the question than the others cited, as they were actions by a single depositor to recover of officers of a bank by judgment a sum equivalent to the amount of his deposit account lost to him through mismanagement resulting in the insolvency of the bank. In the Quigley Case, the court held:

"The term 'wind up,' when construed in connection with the context of the section in which it is found and in connection with the broad term of Revised Laws 1910, section 304 (now section 4165, C. O. S. 1921) undoubtedly involves the entire process of settling the accounts and liquidating the assets of an insolvent bank for the purpose of distribution among the creditors.

"A petition against a failed bank which shows that the banking institution is in the hands and under the supervision of the Bank Commissioner, in process of liquidation, fails to state a cause of action for recovery on a time deposit against the banking institution."

The Spencer Case followed the ruling of the Quigley Case. In paragraph 2 of the syllabus, it was held:

"When an insolvent bank is in the hand of the Bank Commissioner for the purpose of administering its assets, including an additional liability of a stockholder, a depositor of the failed bank cannot maintain an independent action against such stockholder for the purpose of recovering judgment on account of money previously deposited in the said bank."

A reading of the opinions in those cases will disclose that the decision thereof proceeded on the theory that they involved the right of recovery on what is generally referred to as the double liability of shareholders as fixed by section 4122, C. O. S. 1921, in distinction to the tortious liability, if we may so term it, as fixed by section 4119. Said section 4122, provides:

"The shareholders of every bank organized under this article shall be additionally liable for the amount of stock owned, and no more."

That liability is assumed by every stockholder alike upon his becoming a stockholder of the bank, and thus it arises from a contractual relationship to the corporation. Its being expressly limited in amount and contractual in character easily distinguishes it from the liability fixed by section 4119, which partakes of the nature of a penalty from the fact that it arises from the commission of a tort by a stockholder either as an officer or director, or other person, resulting in loss to the parties named in the statute, and is charged upon the offender alone. The Quigley and Spencer Cases therefore apparently treated of a phase of our banking law not here involved.

But if the Quigley and Spencer Cases are to be given a broad application, so that they may be said to be in point, it is to be borne in mind that the rules thereof find their basis in the bank guaranty fund provisions of the Banking Code, which existed from the vitalization of said section 1, article 14, of the state Constitution, to the time of their repeal by chapter 137, S. L. 1923, which were in force at the origin of those cases. The law then provided that depositors should be compensated for their losses out of the guaranty fund, with subrogation of their statutory rights to the state, whereupon a first lien was acquired against the fixed statutory liabilities of officers, directors, and shareholders of the particular bank, and by the state enforceable for the benefit of the guaranty fund. The law then also provided that secured depositors should not share in the bank guaranty fund and were in effect relegated to their sureties first for recoupment of their losses, of which class the plaintiff in the Spencer Case was. If the surety was required to pay a depositor's loss, he was by statute entitled to participate ratably with the guaranty fund in the assets of the insolvent bank. Under the law then the State Bank Commissioner had exclusive control in the administration of an insolvent bank until the guaranty fund was fully reimbursed.

Upon the repeal of the bank guaranty fund provisions of law, the reason for the rules of the Quigley and Spencer Cases ceased in respect to the tortious liability, though the reason therefor still obtains in respect to the contractual liability, which manifestly is intended as a trust fund for the benefit of all creditors alike as has been held both prior and subsequent to the repeal thereof. See Blackert v. Langford, 74 Okla. 61, 176 Pac. 532, prior, and State ex rel. Mothersead v. Kelly, 141 Okla. 36, 284 Pac. 65, subsequent. This applies equally to State ex rel. Short v. Norman, 86 Okla. 36, 206 Pac. 522, and Kimbriel v. State ex rel. Walcott, 106 Okla. 177, 233 Pac. 420, and the other cases cited by defendants, if they measureably may be said to be in point.

When the history of our banking legislation is taken into consideration, it becomes quite clear that during the existence of the bank guaranty fund provisions of the Banking Code, it was the policy of the state to stand between the depositor and his bank, and through the guaranty fund protect him against any loss by reason of the insolvency of the bank, and to assume the enforcement of his rights as a part of the plan at replenishment of the fund. When the state withdrew from the role of such a protector by the repeal of the guaranty fund provisions, the depositor was left to such protection as was given to him by section 4119, and such other protection as he may have under other provisions of the banking laws of the state, and as constituting the state's answer to the constitutional mandate to "provide for the protection of depositors."

As the law stood, therefore, at the accrual of plaintiff's cause of action, he had two means of recourse for the recoupment of his loss. The one accrued to him under section 4119, which, as we have seen, is by suit against the offenders of the law as is in action on the case at common law, and the other is his right to a ratable distribution of the assets of the insolvent bank supplemented from the enforcement of such liabilities of the officers, directors and stockholders as may have accrued to the bank for the benefit of its creditors collectively. In the one, the State Bank Commissioner has no concern, and in the other, he is charged with the duty of administration.

Barrett v. Skalsky, 118 Kan, 162, 233 Pac. 1043, involved a question of whether or not the receiver of an insolvent bank, under statutes similar to the banking laws of this state, had the authority "to bring suit on behalf of individual depositors to enforce the liability of officers and directors for receiving deposits or consenting to the receipt of deposits during the bank's insolvency." The court denied such right. In the discussion, the court used language, to wit:

"The statutes quoted make the directors and managing officers of a bank responsible to the depositors for deposits received from

them while the bank is insolvent. Such liability is not an asset of the bank which passes to the receiver. No power is conferred upon the receiver to recover such deposits. The remedy given is for the wrong done the individual depositors whose money is received during the bank's insolvency. The action is individual to the wronged depositor. It sounds in tort. The injury done by the fraudulent conduct of the bank officials is the basis of the liability and the injured party is the one entitled to redress. Mallon v. Hyde (C. C.) 76 F. 388. The receiver is not the agent of the individual depositor and cannot recover for him. Each individual depositor has or may have a cause of action based on facts or circumstances that apply to him only, and entirely different from any other depositor. See, also, Kinter, Receiver, v. Connolly, 233 Pa. 5, 81 A. 905; 4 Fletcher on Corporations, 3919; 8 Fletcher on Corporations, 8939."

To the same effect are the cases of Ivie v. Bailey, and Bane v. Powell, supra.

It is clear, therefore, that the right of action accruing to a depositor under section 4119, is personal to him, and exists independently of the power given by statute to the State Bank Commissioner to take over and wind up the affairs and business of the bank for the benefit of creditors collectively.

But defendants further say that maintenance of such an action by the depositor would constitute an interference with the administration of the insolvent bank by the Bank Commissioner, which, under the cases cited by them, would not be permitted. Since we have seen, in our consideration of the preceding phase of this case, that the bank through its receiver, the Bank Commissioner, has no interest in an action brought by the individual depositor for his benefit alone, it would seem that the rule of noninterference relied on by defendants can have no application. While the exercise of the right of individual action may result in a multiplicity of actions against an offending director who brings himself within the meaning of section 4119, by the parties named in the statute suffering damage as a result of his violation of the law, yet, we see nothing in the legislative language in any part of the Banking Code which would operate either to stay or to suspend the right of such action during the pendency of liquidation proceedings by the state Bank Commissioner, for as was said in Bane v. Powell, supra, "the right of action by the individual creditor, depositor or stockholder, against officers, or directors is not affected by the receivership, occasioned by insolvency. 7 C. J. 735."

As has been noted, the depositor has two means of recourse to recoup his loss. In other words, the remedy afforded to the depositor is one of compensation for the damage sustained by him, with the measure thereof being the amount of his actual loss occasioned by the insolvency of the bank. Though he has two means of recourse, he is not restricted to one alone; he may look to both, and may pursue both at the same time, but, of course, he cannot have more than one satisfaction. Eads v. Orcutt, 79 Mo App. 511; Ramsey v. Peterson, 115 Kan. 212, 222 Pac. 117.

The fact of pendency of liquidation proceedings by the State Bank Commissioner to wind up the affairs and business of the insolvent bank pursuant to law, therefore, does not preclude the maintenance of the action against the directors by the individual depositor, as that cannot be said to be an inconsistent remedy to that of his right of recompense from the liquidation of the assets of the bank supplemented from the enforcement of the liabilities of officers, directors, and stockholders as may have accrued to the bank and enforceable by the State Bank Commissioner as a part of the process of liquidation for the benefit of all parties interested. The point thus urged by defendants, therefore, is resolved into a question for consideration by the Legislature rather than one for determination by the judiciary, and, therefore, the fact of the pendency of liquidation proceedings at the time of the institution of the individual action is not a valid objection to its maintenance.

From these conclusions, it follows that the action of the trial court in sustaining defendants' demurrer to plaintiff's petition was error.

Accordingly, the judgment of the district court is reversed, and the cause remanded, with directions to overrule the demurrer, and for such further proceedings as may not be inconsistent with this opinion.

BENNETT, FOSTER, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 3 L. R. A. (N. S.) 438; 3 R. C. L. p. 475; R. C. L. Perm. Supp. p. 812. See "Banks and Banking," 7 C. J. §169, p. 564, n. 30.