## McCONNELL et al. v. RAY.

No. 24727. March 9, 1937.

Rehearing Denied Sept. 21, 1937.

Mounts & Chamberlin, J. B. Dudley, Duke Duvall, and H. P. Daugherty, for plaintiffs in error.

Stansell Whiteside, H. W. Reeves, and Tomerlin, Chandler & Shelton, for defendant in error.

BUSBY, J. This is an action by Walter Ray, a depositor of the Security State Bank of Frederick, Okla., to recover from J. E. McConnell, C. E. McConnell, and J. B. Milam, who were officers and directors of the bank at the time it closed on January 14, 1936, damages for losses sustained by him as a depositor.

The plaintiff upon a trial by jury recovered judgment for $879.28, which represented the amount of his deposit. The defendants by joint as well as separate petitions in error present the cause to this court for review, appearing herein as plaintiffs in error. We shall continue to refer to the parties by their trial court designations.

The Security State Bank of Frederick, Okla., was a state banking institution organized and doing business as a banking corporation under the laws of this state. Its place of business was Frederick, Okla. At the time it closed and for a long time prior thereto, C. E. McConnell was one of the directors and cashier. He was the most active managing officer and drew an annual salary of $10,000 as cashier. J. E. McConnell, the father of C. E. McConnell, was a director and president. He drew a salary of $100 per month on the theory that he took an active part on a part-time basis in managing the affairs of the bank. He also owned the building in which the bank did business and collected monthly rentals from it as his tenant varying from $200 to $250 per month. J. B. Milam and others not made parties to this litigation comprised the remainder of the board of directors.

C. E. McConnell lived at Frederick during all of the time the bank was in operation. J. E. McConnell lived there practically all of the time during the existence of the bank. J. B. Milam lived at Chelsea, Okla., 350 miles distant.

The McConnells were regular in their attendance at the meetings of the board of directors. J. B. Milam was seldom present. Occasionally Milam voted by proxy, but generally did not take part even in this indirect manner. From time to time he visited the bank informally and sometimes held long-distance telephone conversations with C. E. McConnell relating to the bank's business. He was not generally acquainted with the bank's customers.

This action was, as plaintiff in his brief states, instituted under that portion of section 9124, O. S. 1931, which reads:

"Any director, officer or other person who shall participate in any violation of the laws of this state, relative to banks and banking, shall be liable for all damages which the said bank, its stockholders, depositors or creditors shall sustain in consequence of such violation"

—and the rule announced in Paris v. Beckner, 143 Okla. 238, 289 P. 276, wherein we held that an individual depositor could maintain and prosecute an action under the above-quoted statutory provision. In that case we also incidentally declared that bank directors who permit or connive at the reception of deposits are guilty of participation in a violation of the law within the meaning of the statute and are civilly liable for damages suffered by reason thereof. (See section 9188, O. S. 1931.)

There are a large number of mandates and prohibitions incorporated in the statutes of this state relating to banks and banking. (Section 9101, et seq., O. S. 1931,) The plaintiff in instituting this action alleged in substance the violation by the defendant of a number of these statutory provisions in connection with the management and operation of the bank. The proof offered by the plaintiff in support of his petition, combined with the proof offered by the defendants in attempting to avoid an adverse judgment, fills a voluminous record. Practically all of the evidence is reviewed and presented in the briefs of the parties in connection with the various phases of the case.

Upon consideration of the cause we have concluded that it should be affirmed as to the defendant C. E. McConnell, and reversed and remanded as to the other two defendants.

An important phase of the case was submitted to the jury in the court below under inappropriate instructions which as to the defendants J. E. McConnell and J. B. Milam constituted substantial and prejudicial error.

A consideration of each of the alleged violations of the statutes and a review of the evidence in connection therewith would, in view of our ultimate judgment, be unnecessarily offensive to brevity. We shall, therefore, direct our remarks to those phases of the case immediately pertinent to the disposition of this appeal.

Section 9107, O. S. 1931, requires the periodical publication of reports concerning the bank's condition, which published reports must be verified by the president or cashier and attested by the signatures of at least two of the directors. Section 9186, O. S. 1931, makes any officer or director of a bank who shall knowingly or willfully subscribe to or make any false report or statement with intent to deceive any person as to the condition of the bank guilty of a felony. In reliance upon these provisions of our banking laws, the plaintiff in his petition alleged, in substance, that the defendants, as directors, made and published false reports concerning the bank's condition with knowledge of the falsity thereof.

In support of the charge as contained in their petition, evidence was introduced supporting the view that one or more of the notes which were reflected as assets in the published statements of the bank's condition were of a fictitious character and in reality not assets at all. The fictitious nature of these alleged assets was not reflected upon the face of the paper. Undoubtedly C. E. McConnell knew their true character. He did not take the stand to deny his knowledge in this respect and he was unquestionably personally connected with the acquisition of the disputed paper by the bank. Evidence of a somewhat circumstantial nature also supports the view that J. E. McConnell was conversant with the true character of the apparent assets. This evidence was, however, disputed as to J. E. McConnell, who denied his knowledge of or connection with the transactions. As to J. B. Milam, the evidence in connection with this phase of the case is weak, to say the least. It is doubtful if he knew of the shady character of the fictitious assets, and he was not one of the directors who subscribed to the allegedly false report of the bank's condition.

Instruction No. 11, as given by the trial court, covered this phase of the case. By it the jury was advised:

"In this connection, you are instructed that if you find from the evidence that the defendants, as officers and directors of said bank, did cause to be circulated and published, from time to time, false statements as to the condition of affairs, assets, resources, and liabilities of the Security State Bank, and these statements were false and misleading, you are instructed that if said fraudulent statements as to the condition of said bank were put forth under the authority of the directors and officers of said bank and that plaintiff, in dealing with said bank, relied upon said statements and representations, and in reliance upon said statements made the deposit, as alleged in this petition, or having made said deposits, permitted the same to remain in said bank in reliance upon said statements and representations, that it is no defense that said directors did

not know said statements to be false and fraudulent, for the reason it was their duty as officers and directors of said bank to know the condition of said bank, and it is no defense to say that the defendants themselves were misled as to the condition of said bank, and themselves suffered loss, for the reason that they had no opportunity to know the true condition of said bank, and it was their duty to have known the same and they should not have permitted statements to go out upon their authority as to the condition of said bank which were untrue, and ignorance will not excuse them where they had a means of knowledge, and where, by the exercise of ordinary care, they could have known and ascertained the true condition of the affairs of said bank; and you are instructed that it is the law of this state that if the directors of an insolvent bank make false and fraudulent statements as to its condition and thereby induce depositors not only to make new deposits but also permit a part of the funds and deposits already made to remain, that they are individually liable in case of loss for all of the deposits, both new and old."

The error of this instruction lies in the fact that it ignores the test of liability prescribed by the statute under which the plaintiff instituted and prosecuted this action. The violation of the law in connection with the publication of the statements consisted of the publication of false statements with knowledge of the falsity thereof and with intent to deceive. The statute providing for civil liability on the part of the directors for such violation of the law (section 9124, supra) required participation in the violation of the law as a basis for such liability. The instruction authorized a judgment against the defendants on an entirely different basis. Their liability for resulting loss is therein authorized to be predicated upon the publication of false reports, notwithstanding their want of knowledge or failure to participate in the offensive act on the theory that they were charged with the duty of knowing the bank's condition, which the trial court assumed could have been ascertained by them through the exercise of ordinary care.

A similar question was presented to the Supreme Court of the United States in the case of Yates v. Jones National Bank, 206 U. S. 158, 51 L. Ed. 1002, in connection with the federal statutes which govern national banks, in which the statute provided civil liability for "participation in or assent to" a violation of the law and (similar to our statute ) provided for the publication of reports verified "by the oath or affirmation of the president or cashier" and "attested by the signature of at least three directors." In holding a test of liability (similar to that embodied in instruction No. 11, supra) to be erroneous, it was said:

"The civil liability of national bank directors then, in respect to the making and publishing of the official reports of the condition of the bank, a duty solely enjoined by the statute, being governed by the national bank act, it is self-evident that the rule expressed by the statute is exclusive, because of the elementary principles that where a statute creates a duty and prescribes a penalty for nonperformance, the rule prescribed in the statute is the exclusive test of liability. Farmers' & M. Nat. Bank v. Dearing, 91 U. S. 29, 35, 23 L. Ed. 196, 199, and cases cited. The error in the decision below becomes at once apparent when its correctness is tested by the rule that the statute is applicable and prescribes the exclusive test of liability. The doctrine, as we have seen, upon which the court below rested its judgment, was that directors of a national bank who merely negligently participated in or assented to the making and publishing of an untrue official report of the condition of the bank were civilly liable to any one deceived to his injury by such report. Indeed, in one respect, the ruling below went further than this, since it was, in substance, decided that, despite the exercise of diligence by the director, if he attested an untrue report he was civilly liable, because he did so at his risk, since it was his duty to know or to refrain from acting. That this imposed a higher standard of conduct than was required by the statute is obvious, but is clearly also established by previous decisions of this court, pointing out that where by law a responsibility is made to arise from the violation of a statute knowingly, proof of something more than negligence is required; that is, that the violation must in effect be intentional."

Subject to certain exceptions not involved in this action, "words used in any statute are to be understood in their ordinary sense." (Section 24, O. S. 1931.) The word "participate" is said in Webster's New International Dictionary to mean "to have a share in common with others; to take part; to partake; share." Participation in a violation of the law may be accomplished by omission as well as by an act of commission in cases where the statute makes the omission or failure to act a violation of the law, as, for instance, **permitting** the reception of deposits with knowledge of insolvency (section 9188, O. S. 1931) as was noted in Paris v. Beckner, supra. (Observe, also, in this connection section 9113, O. S. 1931.) But where, under the applicable statute, knowledge of the falsity of published reports as well as the publication thereof constitutes the violation of the law, a director sought to be charged as one participating in such violation must not only

have some part in the commission of the act, but that part must be taken with knowledge of the falsity of the report. Such was the holding of the Supreme Court of the United States. Such is our view.

In this case it is no answer to this conclusion to observe that, independent of statutes and upon principles of the common law, bank directors are required to be diligent in the discharge of their duties and may be held liable for negligence in the performance thereof, for the plaintiff did not pitch his action on that theory. Negligence is neither directly nor indirectly alleged in the petition in connection with the published statements. The many authorities mentioned in the briefs which deal with the tests of liability of bank officers and directors upon tests governed by the common law are not available as controlling or even persuasive authority by reason of the statutory basis upon which this case rests. Neither is it proper to discuss whether the term "laws," as included in section 9124, supra, is broad enough to include both common and statutory laws relating to banks and banking, because (with one exception which we shall hereafter note and otherwise dispose of) the violations of the law charged in plaintiff's petition involve the statutory law alone.

The plaintiff places an unwarranted degree of reliance upon the case of Paris v. Beckner, supra, and especially stresses that portion of the opinion quoting from Winfield v. Ott, 7 Okla. 512, 54 P. 714. An examination of Winfield v. Ott discloses that it is predicated entirely on a statute long since repealed which prescribes a "standard of care" entirely different from that prescribed by now existing statutes. If that statute were still in existence, it would justify in part instruction No. 11 as given by the trial court. But the statute no longer exists. We did not reenact it when in Paris v. Beckner, supra, we quoted from a case (Winfield v. Ott) which was decided while the former statute was in force and effect.

In plaintiff's brief allusion is made to the asserted fact that the published reports were incomplete in that the assets and liabilities were not properly divided and classified. This incompleteness as to detail is unavailable, because it is not the basis in whole or in part of plaintiff's action.

Plaintiff also presents the point that additional elements of falsity existed in the published reports because certain assets (other than the fictitious assets) therein contained were not worth their face value and were being criticised by the Bank Commissioner. We do not think that mere criticism of an asset by the Bank Commissioner justifies the conclusion that it is worthless. It is the duty of the Bank Commissioner to command the withdrawal of worthless asset, but in the absence of fraud upon or concealment of material facts from the Bank Commissioner concerning the facts in connection with a listed asset, or knowledge of its worthlessness, its inclusion in the totals reflected by published statements does not render the report false.

If such worthless assets were included in the published reports in this case, the knowledge of their worthlessness depended upon the possession of extrinsic information. The knowledge was denied by two of the defendants, and by reason of the denial the test of liability as heretofore considered was erroneous.

In accordance with the views expressed, we hold that as to J. E. McConnell, who denied knowledge of the falsity of the reports, and as to J. B. Milam, who denied knowledge of falsity and participation in the publication thereof, the error contained in instruction No. 11 was prejudicial. It is impossible to determine from the record what part of the judgment is attributable to this erroneous instruction. Thus the error cannot be cured by remittitur. As to C. E. McConnell, whose participation in the publication of the reports and knowledge of the falsity thereof is unquestionable, the error is harmless.

The fact that J. E. McConnell has been convicted of a criminal offense in connection with the management of this bank does not deprive him of his right to have the issue of his civil liability determined in accord with the requirements of the law.

There are many other violations of the statutes involved in this action. In some respects the instructions in connection therewith are in error. Our views upon the phase of the case considered will enable the trial court in the retrial hereof to eliminate objectionable features without specific consideration in this opinion. We do not find in the other features of the cause any error which would relieve C. E. McConnell from liability or entitle him to a reversal of the cause.

In one respect the plaintiff departs from the banking statutes in seeking recovery. He alleges specific fraud and deceit by misrepresentation to him by C. E. McConnell and J. E. McConnell. The test of liability on this phase of the case is not governed by the

statutory enactments and appropriate instructions independent thereof may be given, providing the proof on retrial justifies a submission of this issue.

This case was in most respects closely tried in the court below, but further questions may be avoided if detailed consideration be given to the financial detriment suffered by plaintiff as a result of each violation of the law.

In affirming this case as to C. E. McConnell, who participated in all of the acts which resulted in plaintiff's loss, we impose this condition: The trial court will credit, or provide for credit, on the judgment of any dividends received previously or hereafter through liquidation of the bank. Any dividends declared after full payment of the judgment by McConnell will be paid to him. As so modified, the judgment as to C. E. McConnell is affirmed.

OSBORN, C. J., and CORN, GIBSON, and HURST, JJ., concur. BAYLESS, V. C. J., and RILEY, WELCH, and PHELPS, JJ., absent.

Supplemental Opinion on Rehearing.

HURST, J. We desire to supplement the opinion heretofore rendered in this case by a further consideration of the rule adopted from the case of Yates v. Jones National Bank, 206 U. S. 158, 51 L. Ed. 1002, as it has been interpreted in the subsequent case of Thomas v. Taylor, 224 U. S. 73, which has not heretofore been called to the attention of this court. From the Yates Case we derived the rule that the test of liability prescribed by the statute under which plaintiff instituted and prosecuted this action requires that the director sought to be charged have knowledge of the falsity of the report as well as participation therein. It will be noted in the quoted portion of the opinion, where the Supreme Court of the United States holds the instruction of the trial court (similar to instruction No. 11 in the instant case) to be erroneous, that the last sentence thereof is as follows:

"That this imposed a higher standard of conduct than was required by the statute is obvious, but is clearly also established by previous decisions of this court, pointing out that where by law a responsibility is made to arise from the violation of a statute knowingly, proof of something more than negligence is required; that is, that the violation must **in effect** be intentional."

In the case of Thomas v. Taylor, supra, the latter part of this sentence is quoted and construed as follows:

"Not, therefore, that as a condition of liability there should be proof of something more than recklessness,—not that there should be an intentional violation,—but a violation 'in effect' intentional. There is **"in effect" an intentional violation of a statute when one deliberately refuses to examine that which it is his duty to examine."**

To properly understand to what extent the requirement of knowledge has been relaxed by this case, an explanation of the facts is necessary. The action was originally framed in deceit under the common law to recover damages for being induced by false reports to purchase 30 shares of bank stock upon which he was promptly compelled to pay 100 per cent. assessment. Although the action was against the directors of a national bank, it was not based upon any liability stated in the National Banking Act. The trial court rendered judgment in favor of plaintiff. The defendants appealed to the Appellate Division of the Supreme Court of New York, where the judgment was affirmed. That court gave a broader effect to the action, "and decided that its requirements under the common law of the state coincided with the requirements of the statutes of the United States, and satisfied the measure of responsibility of those statutes as expressed in Yates v. Jones National Bank." The case was further appealed to the New York Court of Appeals and the judgment again affirmed. Upon appeal to the Supreme Court of the United States, it was admitted that the measure of liability was that laid down by the national banking laws, and the court considered the requirement of knowledge essential. In this opinion it was recited that the Appellate Division decided that the defendants had knowledge of the falsity, which they did not deny, and the case could have been affirmed upon this ground. But the court, "not insisting on this," proceeded to interpret the rule in the Yates Case, as quoted above, and it was decided that since the directors had a direct warning that certain assets were doubtful and should be collected or charged off, to represent these assets to be good, in disregard of the bank examiner's direction, was "in effect" intentional publication of false reports.

It thus appears that this case does not relax the rule in the Yates Case to the extent of supporting instruction No. 11. The instruction is still erroneous. This case does not impose upon bank directors the common-law liability for negligence, but relaxes the statutory test to the extent that

knowledge will be inferred if the director refuses to examine that which it is his duty to examine. The duty referred to is not to exercise ordinary care to know the bank's condition, but is imposed only when one's attention is specifically directed to the matter complained of.

In the responses to the petition for rehearing it is claimed that the Thomas Case is not in point for the reason that it is a common-law action in deceit, and knowledge was not made an issue, and for the further reason that the interpretation of the rule in the Yates Case was dictum. With the first assertion we cannot agree, under what we consider the clear language of the opinion outlined in some detail above. With the latter assertion we do agree. But we are persuaded by this dictum and adopt the same view of interpretation.

The result, however, must remain the same. Under this view, J. E. McConnell would be presumed to have knowledge of the falsity of the report if the fictitious character of the notes had been called to his attention. Being thus warned, he would be under a duty to examine the report and could not defend on his ignorance of its contents. But he denies knowledge of the fictitious character of the notes, and we find no evidence that he was specifically warned against them. The letter from the Bank Commissioner, as pointed out in the former opinion, criticized other assets, and did not complain of the notes in question. Under the circumstances, knowledge is a question for the jury under proper instructions. The same may be said for the defendant Milam.

With this explanation the petition for rehearing is denied.

All the Justices concur.